985 A.2d 871

**COMMONWEALTH of Pennsylvania, Appellant**

v.

**Paul A. SEGIDA, Appellee.**

Supreme Court of Pennsylvania.

Submitted March 17, 2008.

Decided Dec. 29, 2009.

104

Michael Wayne Streily, Amy Elizabeth Constantine, Allegheny County District Attorney's Office, Pittsburgh, for Commonwealth of Pennsylvania.

Louis W. Emmi, Pittsburgh, for Paul A. Segida.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, JJ.

## OPINION

Justice McCAFFERY.

In this appeal by the Commonwealth, we consider whether the offense of driving under the influence ("DUI") set forth at 75 Pa.C.S. § 3802(a)(1) is an "at the time of driving" offense.

While we agree with the Superior Court's conclusion that it is such an offense and so hold, we conclude that the Superior Court erred in determining that the evidence was insufficient to support a conviction in this case. Accordingly, we vacate the order of the Superior Court and remand to the trial court.

On September 19, 2004, at approximately 12:20 a.m., Officer Patrick Hillyard was dispatched to investigate a report of a one-vehicle accident. He arrived at the scene within a few minutes, to find a vehicle at the top of a hillside in some brush, rotated 180 degrees. Paul A. Segida ("Appellee"), who with his brother was standing near the vehicle, acknowledged that he was the owner of the vehicle, that he had been driving, and that he had lost control of the vehicle after he started arguing with his brother. While conversing with Appellee, Officer Hillyard detected a strong odor of alcohol coming from his person. Upon further questioning, Appellee admitted that he had been drinking at one of the local clubs and had been driving home when the accident occurred. Officer Hillyard then asked Appellee to perform three field sobriety tests, all of which Appellee performed very badly. Based on the field sobriety test results, Officer Hillyard concluded that Appellee was incapable of safely driving at that time, and accordingly placed Appellee under arrest and drove him to a hospital to have his blood alcohol level tested. The test results revealed that Appellee had a very high blood alcohol level: 0.326 percent.

Appellee was charged with two counts of DUI: 75 Pa.C.S. § 3802(a)(1) (General impairment) and 75 Pa.C.S. § 3802(c) (Highest rate of alcohol). On October 20, 2005, a bench trial was held before the Honorable Cheryl Allen,[1] in which Officer Hillyard was the only witness to testify. Judge Allen found Appellee guilty of both counts.[2] On December 14, 2005, Appellee was sentenced to serve 180 days of intermediate punishment on electronic monitoring and three years' probation.

1. Judge Allen now serves on the Superior Court of Pennsylvania.

2. Appellee was also found guilty of one count of careless driving, 75 Pa.C.S. § 3714. This conviction is not at issue in the instant appeal.

Appellee appealed his judgment of sentence to the Superior Court, arguing that the evidence was insufficient to sustain either one of his DUI convictions because the Commonwealth had failed to produce any evidence as to the time when Appellee drank, when he drove, or when the accident occurred. *Commonwealth v. Segida,* 912 A.2d 841, 844 (Pa.Super.2006). The Commonwealth conceded that the evidence was insufficient to prove that Appellee had violated Section 3802(c) (Highest rate of alcohol).[3] The Superior Court held that the evidence was insufficient to support either of Appellee's DUI convictions and accordingly reversed Appellee's judgment of sentence. *Segida, supra* at 844, 850. With regard to Section 3802(a)(1), the Superior Court concluded that the Commonwealth had not established **when** Appellee was driving, and thus had failed to prove that Appellee was incapable of driving safely **at the time that he was driving.** *Id.* at 850. The Superior Court acknowledged that a reasonable fact-finder could have concluded that, when Officer Hillyard arrived at the scene of the accident, Appellee was incapable of safe driving. *Id.* at 847. However, the Superior Court concluded that because the Commonwealth had failed to establish any temporal connection between the time of the accident and the time that the officer arrived at the scene, it had not been proven beyond a reasonable doubt that Appellee was incapable of safely driving at the time he was driving. *Id.* at 847–50. In addition, the Superior Court opined that there was another difficulty with the Commonwealth's offer of proof, *i.e.,* the Commonwealth had not precluded the possibility that Appellant ingested alcohol **after** the accident had occurred. *Id.* at 848–49.

**3.** Specifically, the Commonwealth conceded that it had failed to establish the time at which Appellee's blood was drawn for blood alcohol testing, and therefore could not prove that Appellee's blood alcohol level was elevated within two hours after he had driven, as required under Section 3802(c). The Superior Court agreed, concluding that there was "no indication whatsoever of when [Appellee's] blood was drawn and no expert testimony establishing [Appellee's] likely [blood alcohol content] at various points in the evening." *Segida,* 912 A.2d at 845. The Superior Court's reversal of Appellee's conviction under Section 3802(c) is not at issue in this appeal.

The Commonwealth petitioned this Court for allowance of appeal, seeking review of the Superior Court's decision with respect to Section 3802(a)(1). We granted the Commonwealth's petition, which expressed the issue for review as follows:

> In finding insufficient evidence to support the 75 Pa.C.S. § 3802(a)(1) DUI offense, did the Superior Court err in determining what the elements are for a Section 3802(a)(1) DUI offense and err in concluding it is an "at the time of driving" offense?

*Commonwealth v. Segida*, 594 Pa. 524, 937 A.2d 419 (2007).

■■ The issue presented is one of statutory interpretation, which, as a question of law, requires that we apply a *de novo* standard of review. *Commonwealth v. Hoke*, 599 Pa. 587, 962 A.2d 664, 666 (2009). Pursuant to the Statutory Construction Act,[4] our task in interpreting a statute is to ascertain and effectuate the intention of the General Assembly. *Id.* at 667 (citing 1 Pa.C.S. § 1921(a)). In general, the best indication of legislative intent is the plain language of the statute. *Commonwealth v. Fithian*, 599 Pa. 180, 961 A.2d 66, 74 (2008). "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b). When the statutory text is not explicit, we may consider, *inter alia*, the mischief to be remedied by the statute, the object to be attained, and the consequences of a particular interpretation. 1 Pa.C.S. § 1921(c). We may not add words or phrases in construing a statute unless the added words are necessary for a proper interpretation, do not conflict with the obvious intent of the statute, and do not in any way affect its scope and operation. 1 Pa.C.S. § 1923(c); *Hoke, supra* at 667. However, we may consider the title and the preamble of the statute. 1 Pa.C.S. § 1924. Finally, we presume that the General Assembly does not intend a result that is absurd or

4. Act of December 6, 1972, P.L. 1339 No. 290, set forth in 1 Pa.C.S. §§ 1901–91.

unreasonable. 1 Pa.C.S. § 1922(1); *Commonwealth v. Bavu-sa*, 574 Pa. 620, 832 A.2d 1042, 1050 (2003).

The statute at issue here is the following:

**§ 3802. Driving under influence of alcohol or controlled substance**

**(a) General impairment.—**

(1) An individual **may not drive,** operate or be in actual physical control of the movement of a vehicle **after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving,** operating or being in actual physical control of the movement of the vehicle.

(2) An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the alcohol concentration in the individual's blood or breath is at least 0.08% but less than 0.10% within two hours after the individual has driven, operated or been in actual physical control of the movement of the vehicle.

**(b) High rate of alcohol.—**An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the alcohol concentration in the individual's blood or breath is at least 0.10% but less than 0.16% within two hours after the individual has driven, operated or been in actual physical control of the movement of the vehicle.

**(c) Highest rate of alcohol.—**An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the alcohol concentration in the individual's blood or breath is 0.16% or higher within two hours after the individual has driven, operated or been in actual physical control of the movement of the vehicle.

75 Pa.C.S. § 3802 (emphasis added to text of subsection (a)(1)).

The General Assembly enacted Section 3802 on September 30, 2003, and it became effective on February 1, 2004, repeal-

ing and replacing the prior DUI statute, which had been found at 75 Pa.C.S. § 3731. *See Commonwealth v. Duda,* 592 Pa. 164, 923 A.2d 1138, 1140 n. 1 (2007). Under the now-repealed Section 3731, it was and is undisputed that the proscribed conduct was driving "**while** under the influence of alcohol to a degree which renders the person incapable of safe driving," or driving "**while** the amount of alcohol by weight in the blood of the person is 0.10% or greater." 75 Pa.C.S. § 3731(a)(1) and (a)(4), respectively, (repealed) (emphasis added). *See Duda, supra* at 1141–44 (setting forth a brief review of the historical background to the repeal of Section 3731 and enactment of Section 3802). This Court has already made clear that, in contrast to the now-repealed subsection 3731(a)(4), which required a specific blood alcohol level **at the time of driving,** subsection 3802(a)(2) deems irrelevant a motorist's blood alcohol level at the time that he or she was driving. *Duda, supra* at 1147. Rather, under subsection 3802(a)(2), the relevant determination is a motorist's blood alcohol level **within two hours after driving.** *Id.*

The question presented in the instant case is whether, by analogy to subsection 3802(a)(2), subsection 3802(a)(1) does **not** require the Commonwealth to prove that a motorist had been rendered incapable of safely driving **at the time that he or she actually drove.** In other words, does subsection 3802(a)(1) resemble subsection 3802(a)(2) in that the actual time of driving is not included in the elements of the offense? Or, alternatively, does subsection 3802(a)(1) resemble the repealed subsection 3731(a)(1) in that an element of the offense is driving **while** incapable of doing so safely? More succinctly, the issue can be stated as follows: is subsection 3802(a)(1) an "at the time of driving" offense?

This Court has not previously had the occasion to interpret subsection 3802(a)(1); however, we have upheld subsection 3802(a)(2) in the face of a constitutional challenge. *See Duda, supra* at 1147–52. Although *Duda* did not include a challenge to subsection 3802(a)(1), we compared subsection 3802(a)(1) to subsection (a)(2) in that case as follows:

Section 3802(a) represents a legislative enlargement of the prohibited conduct so that **it is now unlawful, not only to drive** *while* **under the influence,** *see* **75 Pa.C.S. § 3802(a)(1),** but also to ingest a substantial amount of alcohol and then operate a motor vehicle before the alcohol is dissipated to below a defined threshold (here, 0.08%), regardless of the level of absorption into the bloodstream at the actual moment of driving. That this is so is evident from the plain text of subsection (a)(2), ... which defines the offense to include two elements: that the individual drove after drinking alcohol, and that the amount of alcohol ingested *before* driving was enough to cause the individuals [blood alcohol] level to be at least 0.08 percent and below 0.10 percent within two hours *after* driving.

*Duda, supra* at 1147 (bold emphasis added).

We recognize that the statement in *Duda* concerning subsection 3802(a)(1) is *dicta.* Nonetheless, it suggests the view that the elements of subsection 3802(a)(1), like those of the repealed subsection 3731(a)(1), are that an offender drive while incapable of safely driving due to consumption of alcohol.

In several cases, the Superior Court has specifically addressed subsection 3802(a)(1), similarly and consistently implying that the offense is an "at the time of driving" offense. In *Commonwealth v. Kerry,* 906 A.2d 1237 (Pa.Super.2006), the appellant challenged the sufficiency of the evidence to sustain his conviction under subsection 3802(a)(1). The Superior Court determined that subsection 3802(a)(1) requires the Commonwealth to prove two elements:

(1) [ ] the defendant was operating a motor vehicle, (2) after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely [operating the motor vehicle].

*Kerry, supra* at 1241.

The *Kerry* court noted that subsection 3802(a)(1) is "similar, but not identical" to repealed subsection 3731(a)(1), *Kerry, supra* at 1241 n. 5, and stated the following:

Section 3802(a)(1), like its predecessor [3731(a)(1)], is a general provision and provides no specific restraint upon the Commonwealth in the manner in which it may prove that an **accused operated a vehicle under the influence of alcohol** to a degree which rendered him incapable of safe driving.

*Id.* at 1241 (emphasis added) (citation and internal quotation marks omitted).

The *Kerry* court then considered the sufficiency of the evidence to convict the appellant, relying on precedent established under subsection 3731(a)(1) to deny his challenge. *See id.* at 1241–42. Although the appellant in *Kerry* did not specifically and expressly raise the issue of whether subsection 3802(a)(1) is an "at the time of driving" offense, we conclude, based on the above analysis, that the Superior Court clearly presumed it was.

In *Commonwealth v. Williams,* 941 A.2d 14 (Pa.Super.2008) (*en banc*), another subsection 3802(a)(1) case, the appellant contended that police lacked probable cause to arrest her after she was found asleep in a highly intoxicated state in the back seat of her vehicle, which was stuck across some railroad tracks with the engine running and front wheels turning. *Id.* at 19, 21, 26–29. The appellant argued, *inter alia,* that there was no evidence as to when she had become intoxicated and whether she had operated her vehicle in an intoxicated state. *Id.* at 26. In rejecting the appellant's argument, the Superior Court cited with favor the trial court opinion, which concluded that the facts of the case "support[ed] a reasonable inference that [the a]ppellant had operated and/or was in actual physical control of the movement of her vehicle **while** she was under the influence of alcohol to the degree that it rendered her incapable of safe driving." *Id.* at 29 (emphasis added) (quoting trial court opinion).

In *Williams,* as in *Kerry, supra,* it does not appear that the question of whether subsection 3802(a)(1) is an "at the time of driving" offense was explicitly before the court. However, in each case, the Superior Court's opinion reflects its apparent presumption that subsection 3802(a)(1) does indeed require

proof that the offender **drove while incapable** of driving safely.[5] *See also Commonwealth v. Thur,* 906 A.2d 552, 565 (Pa.Super.2006), *appeal denied,* 596 Pa. 745, 946 A.2d 687 (2008) (in rejecting a constitutional challenge to subsection 3802(a)(1), stating that this subsection "prohibits driving when the vehicle operator is, because of drinking, incapable of safely operating the automobile," and stating that this subsection is "similar" to the now-repealed subsection 3731(a)(1)); *Commonwealth v. McCoy,* 895 A.2d 18, 31 (Pa.Super.2006), *affirmed on other grounds,* 975 A.2d 586 (Pa.2009) (in rejecting a constitutional challenge to subsection 3802(a)(1) as void for vagueness, concluding that the subsection "gives a person of ordinary intelligence notice that he may not drive after imbibing a sufficient amount of alcohol such that he is incapable of driving safely").

5. The Commonwealth disputes this conclusion with regard to both *Kerry, supra,* and *Williams, supra.* With regard to *Kerry,* the Commonwealth argues that the Superior Court instructed that subsection 3801(a)(1) is not an "at the time of driving" offense, but rather "is an offense criminalizing the imbibing of a sufficient amount of alcohol to render one incapable of safe driving but then driving." Commonwealth's Brief at 16. This attempted distinction is untenable, and not entirely understandable. With regard to *Williams,* the Commonwealth argues that the *en banc* Superior Court determined that subsection "3802(a)(1) does not contemplate the time of driving" and the elements of the offense do not include the time of driving. Commonwealth's Brief at 24, 21. The Commonwealth cites the following footnote from *Williams* to support this argument:

> We acknowledge [the a]ppellant's argument that the Commonwealth could not determine the time of the accident, and therefore, could not prove [the a]ppellant was intoxicated at the time she operated the vehicle. ... Although the time between a defendant's [blood alcohol] test and the time of driving is relevant to charges involving [blood alcohol] levels, it is not necessarily dispositive of charges under [subsection] 3802(a)(1). Here, [the a]ppellant refused a [blood alcohol] test. Because the Commonwealth was not concerned with proving [the a]ppellant's [blood alcohol] level at the time of the accident, the exact time of the accident would not end the inquiry.

*Williams, supra* at 30 n. 7.

Contrary to the Commonwealth's argument, the Superior Court did **not**, in the above footnote, suggest that the time when the offender drove is irrelevant to subsection 3802(a)(1). The Superior Court was simply pointing out that, under subsection 3802(a)(1), knowing the exact time of the accident "would not end the inquiry" because the two hour time limitation characteristic of DUI statutes that require proof of a particular blood alcohol level is not an element of subsection 3802(a)(1).

■ In the instant case, the Superior Court, consistent with its prior opinions as discussed above, stated that "75 Pa.C.S. § 3731(a)(1) is the predecessor to 75 Pa.C.S. § 3802(a)(1), and was not changed in any material fashion when the new DUI law was enacted." *Segida, supra* at 849 n. 4. Accordingly, the Superior Court applied subsection 3802(a)(1) as an "at the time of driving" offense and focused on Appellee's inability to drive safely due to intoxication at the time he was driving. *Id.* at 850. As discussed below, we conclude that the Superior Court properly interpreted subsection 3802(a)(1) as an "at the time of driving" offense.

By the plain language of subsection 3802(a)(1), driving is proscribed after the imbibing of sufficient alcohol such that the individual is rendered incapable of safely driving. In contrast to subsections 3802(a)(2), (b), and (c), all of which require that the offender's blood alcohol level reach a certain specified elevation within two hours of driving, there is no time element explicitly delineated in subsection 3802(a)(1). However, to avoid absurd applications of subsection 3802(a)(1), a time element obviously must be inferred. Without the inference of some rational and reasonable temporal link between drinking and driving, then a motorist would violate the statute by driving at **any time**—even days or weeks—after having imbibed sufficient alcohol to be rendered incapable of safely driving. This is an absurd and unreasonable interpretation, which has properly been rejected by the Superior Court. *See McCoy*, 895 A.2d at 30–31; 1 Pa.C.S. § 1922(1). Once sobriety has been regained and one is again capable of driving safely, then driving is no longer proscribed by the statute.

For subsection 3802(a)(1), the only relevant time period is that span of time during which an individual is incapable of safely driving due to alcohol intoxication. Reliance on the plain meaning of the statutory language leads to the logical and reasonable conclusion that driving is proscribed **only** during the span of time when one is incapable of safely driving. *See* subsection 3802(a)(1) ("An individual may not drive ... after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driv-

ing . . . ."). This interpretation is also supported by other considerations, including the title of Section 3802 and the mischief to be remedied and the object to be attained by enactment of the statute. *See* 1 Pa.C.S. §§ 1924 and 1921(c). The title of Section 3802 is "Driving under influence of alcohol or controlled substance," a phrase that can only imply driving **while** under the influence of alcohol or controlled substance. The mischief to be remedied by the statute is certainly driving while under the influence of alcohol and thereby endangering the public, oneself, and property; and the object to be attained by the statute is the prevention of driving while under the influence of alcohol. These considerations also strongly support an interpretation of subsection 3802(a)(1) that proscribes driving only when an individual is incapable of doing so safely as a result of intoxication. *See* 1 Pa.C.S. § 1921(c).

Subsections 3802(a)(2), (b), and (c) explicitly specify a time limit of "within two hours" after driving for determination of blood alcohol level—while subsection 3802(a)(1) does not specify any time frame—because of eminently practical considerations. The necessity for the two hour time limit in subsections 3802(a)(2), (b), and (c) is grounded in the practical impossibility either of measuring blood alcohol level precisely at the time of driving or of calculating the exact blood alcohol level at the time of driving from a single blood alcohol measurement taken at some point in time after driving. *See Duda* at 1141. These practical considerations do not have the same force with regard to subsection 3801(a)(1), which does not limit the type of evidence that the Commonwealth can proffer to prove its case. *See Kerry, supra* at 1241 ("Section 3802(a)(1), like its predecessor [statute], is a general provision and provides no specific restraint upon the Commonwealth in the manner in which it may prove that an accused operated a vehicle under the influence of alcohol to a degree which rendered him incapable of safe driving.") (citation and internal quotation marks omitted).

The types of evidence that the Commonwealth may proffer in a subsection 3802(a)(1) prosecution include but are not limited to, the following: the offender's actions and behav-

ior, including manner of driving and ability to pass field sobriety tests; demeanor, including toward the investigating officer; physical appearance, particularly bloodshot eyes and other physical signs of intoxication; odor of alcohol, and slurred speech. Blood alcohol level may be added to this list, although it is not necessary and the two hour time limit for measuring blood alcohol level does not apply. Blood alcohol level is admissible in a subsection 3801(a)(1) case only insofar as it is relevant to and probative of the accused's ability to drive safely at the time he or she was driving. The weight to be assigned these various types of evidence presents a question for the fact-finder, who may rely on his or her experience, common sense, and/or expert testimony. Regardless of the type of evidence that the Commonwealth proffers to support its case, the focus of subsection 3802(a)(1) remains on the inability of the individual to drive safely due to consumption of alcohol-not on a particular blood alcohol level.

Thus, in sum, we hold that subsection 3802(a)(1) is an "at the time of driving" offense, requiring that the Commonwealth prove the following elements: the accused was driving, operating, or in actual physical control of the movement of a vehicle during the time when he or she was rendered incapable of safely doing so due to the consumption of alcohol. Insofar as the Superior Court characterized and interpreted subsection 3802(a)(1) as an "at the time of driving" offense, the court did not err.[6]

Although we conclude that the Superior Court did not err in its legal interpretation of subsection 3802(a)(1) as an

---

6. However, we reject the Superior Court's implication that, in order to obtain a conviction under subsection 3802(a)(1), the Commonwealth must also prove that an accused did not drink any alcohol after the accident. *See Segida*, 912 A.2d at 849 (stating that "the Commonwealth similarly fails to preclude the possibility that [Appellee] ingested alcohol **after** the accident occurred") (emphasis in original). There is no basis in the statute for insertion of this element. As discussed in the text, *supra*, the Commonwealth must prove that Appellee drove at a time when he was incapable of doing so safely due to consumption of alcohol. The statutory text of subsection 3802(a)(1) will not support an additional element that would place the burden on the Commonwealth to prove that Appellee drank no alcohol after the accident.

"at the time of driving" offense, we cannot accept the Superior Court's application of the statute, which led the court to conclude that the evidence was insufficient to support Appellee's conviction. When reviewing a challenge to the sufficiency of the evidence, we must determine if the Commonwealth established beyond a reasonable doubt each of the elements of the offense, considering the entire trial record and all of the evidence received, and drawing all reasonable inferences from the evidence in favor of the Commonwealth as the verdict-winner. *Commonwealth v. Pruitt*, 597 Pa. 307, 951 A.2d 307, 313 (2008). The Commonwealth may sustain its burden of proof by wholly circumstantial evidence. *Commonwealth v. Kennedy*, 598 Pa. 621, 959 A.2d 916, 921 (2008), cert. denied, —— U.S. ——, 129 S.Ct. 2433, 174 L.Ed.2d 229 (2009).

Turning to the circumstances of the instant case, we conclude that the circumstantial evidence that Appellee drove while he was incapable of driving safely due to ingestion of alcohol was sufficient to establish beyond a reasonable doubt his violation of subsection 3802(a)(1). Appellee admitted that he had been drinking at a local club, and that he was driving himself and his brother home when he lost control of his vehicle. Trial Court Opinion, dated 2/2/06, at 2; Notes of Testimony Trial ("N.T."), 10/20/05, at 9–11. The investigating officer discovered Appellee's vehicle "almost over the hillside at the top ... into some brush," having rotated 180 degrees before coming to a halt off the road. N.T. at 7, 21. When the officer arrived on the scene, Appellee and his brother were out of the vehicle, "on the street right near the vehicle." *Id.* at 7–8. The officer "smell[ed] a strong odor of alcohol coming from [Appellee's] person and his breath." *Id.* at 9. The officer then administered three field sobriety tests, and based on the results thereof, he concluded that Appellee was incapable of safely driving due to alcohol consumption. *Id.* at 12. After arresting Appellee, the officer transported him to McKeesport Hospital for a blood alcohol test, which revealed that Appellee had a very high blood alcohol content: 0.326 percent. *Id.* at 13, 17; Trial Court Opinion at 3. While the officer acknowledged that he had not observed the accident and did not know

exactly what time it had occurred, he opined that it was "doubtful" that the accident had occurred two or three hours or even ten minutes prior to his arrival on the scene "due to traffic on the road." N.T. at 7, 19.

The undisputed evidence of Appellee's strikingly high blood alcohol level—0.326 percent—is noteworthy. Although precisely how much time had elapsed between the accident and Appellee's blood alcohol measurement is unknown, the factfinder is not required to suspend common sense and ignore the fact that Appellee's blood alcohol concentration was not just elevated, but enormously elevated—four times the legal limit of 0.08, and twice the highest rate of alcohol pursuant to subsection 3802(c). Furthermore, the accident itself constitutes evidence that Appellee drove when he was incapable of doing so safely. There was only one vehicle involved in the accident, and Appellee admitted that he had lost control of the vehicle as he was driving home after drinking at a club.

Based on all of this evidence admitted at trial, we conclude that the Superior Court erred when it reversed Appellee's conviction under Section 3802(a)(1). We hold that the evidence was sufficient to establish beyond a reasonable doubt that Appellee drove while incapable of safely doing so due to consumption of alcohol. Accordingly, we vacate the order of the Superior Court, insofar as it concerns 75 Pa.C.S. § 3802(a)(1); reinstate Appellee's conviction under 75 Pa.C.S. § 3802(a)(1); and remand to the trial court for resentencing.[7]

Justice TODD did not participate in the consideration or decision of this case.

Chief Justice CASTILLE and Justices SAYLOR and BAER join the opinion.

Justice EAKIN files a concurring opinion.

Justice GREENSPAN files a concurring opinion.

7. Resentencing is required because the Superior Court also reversed Appellee's conviction under 75 Pa.C.S. § 3802(c), a decision that the Commonwealth did not appeal. *See* n. 3.

Justice GREENSPAN, concurring.

I concur in the result. However, I write separately because, in my view, respectfully, the Majority ignores the plain language of 75 Pa.C.S. § 3802(a)(1) which, by its terms, punishes driving after drinking an amount of alcohol rendering a person incapable of safe driving and not, as the Majority holds, merely driving while intoxicated.

Appellee Paul A. Segida was charged with and convicted of two counts of driving under the influence (DUI) pursuant to 75 Pa.C.S. § 3802(a)(1) and 75 Pa.C.S. § 3802(c), and one count of careless driving pursuant to 75 Pa.C.S. § 3714. Section 3802 provides in relevant part:

(a) **General impairment.**—

(1) An individual may not drive, operate or be in actual physical control of the movement of a vehicle **after** imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle.

(2) An individual may not drive, operate or be in actual physical control of the movement of a vehicle **after** imbibing a sufficient amount of alcohol such that the alcohol concentration in the individual's blood or breath is at least 0.08% but less than 0.10% within two hours after the individual has driven, operated or been in actual physical control of the movement of the vehicle.

(b) **High rate of alcohol.**—An individual may not drive, operate or be in actual physical control of the movement of a vehicle **after** imbibing a sufficient amount of alcohol such that the alcohol concentration in the individual's blood or breath is at least 0.10% but less than 0.16% within two hours after the individual has driven, operated or been in actual physical control of the movement of the vehicle.

(c) **Highest rate of alcohol.**—An individual may not drive, operate or be in actual physical control of the movement of a vehicle **after** imbibing a sufficient amount of alcohol such that the alcohol concentration in the individual's blood ·or breath is 0.16% or higher within two hours after the individ-

ual has driven, operated or been in actual physical control of the movement of the vehicle.

75 Pa.C.S. § 3802 (emphasis added).[1]

On October 24, 2006, a three-judge panel of the Superior Court held in a published opinion that the evidence was insufficient to support both DUI charges and it arrested judgment with respect thereto. *Commonwealth v. Segida*, 912 A.2d 841 (Pa.Super.2006). This Court granted the Commonwealth's Petition for Allowance of Appeal to review only that part of the Superior Court's decision holding that the evidence was insufficient to support Appellee's conviction under 75 Pa.C.S. § 3802(a)(1) because the Commonwealth failed to prove that Appellee was incapable of safe driving **at the time he was driving.** *Segida*, 912 A.2d at 850.[2]

As the Majority notes, the resolution of this matter requires employment of the provisions of the Statutory Construction Act, 1 Pa.C.S. §§ 1501–1991. The object of statutory construction is to determine and apply the intent of the Legislature. 1 Pa.C.S. § 1921(a); *Martin v. Commonwealth, Dep't of Transp.*, 588 Pa. 429, 905 A.2d 438, 443 (2006). The most efficacious and statutorily mandated way to achieve this goal is by scrutinizing the language comprising the statute under review. *See* 1 Pa.C.S. § 1903 ("Words and phrases shall be construed according to rules of grammar and according to their common and approved usage"). When, however, the intent of the Legislature cannot be ascertained from the words of the statute alone, the Act provides the intention of the

1. Section 3802 was enacted as part of the Act of Sept. 30, 2003, P.L. 120, No. 24, effective Feb. 1, 2004 ("Act 24"). It repealed and replaced the prior DUI statute set forth at Section 3731 of the Vehicle Code.

2. The Superior Court arrested judgment with respect to Appellee's conviction under 75 Pa.C.S § 3802(c) because the evidence failed to establish the time at which blood was drawn from Appellee, as required by the wording of this section of the statute. The Commonwealth conceded that the evidence was insufficient to support this charge. *Segida*, 912 A.2d at 846. In addition, the Superior Court held that Appellee waived constitutionally based challenges to 75 Pa.C.S. § 3802 because they had not been raised with sufficient precision in Appellee's Pa.R.A.P.1925(b) statement. *Segida*, 912 A.2d at 845. Neither issue is currently before this Court.

General Assembly may be ascertained by considering, among other matters:

(1) The occasion and necessity for the statute.

(2) The circumstances under which it was enacted.

(3) The mischief to be remedied.

(4) The object to be attained.

(5) The former law, if any, including other statutes upon the same or similar subjects.

(6) The consequences of a particular interpretation.

(7) The contemporaneous legislative history.

(8) Legislative and administrative interpretations of such statute.

1 Pa.C.S. § 1921(c).

In construing a penal statute we must be mindful of the following caveats:

> "[W]here ambiguity exists in the language of a penal statute, such language should be interpreted in the light most favorable to the accused.... [A] court may not achieve an acceptable construction of a penal statute by reading into the statute terms that broaden its scope." [*Commonwealth v. Booth*, 564 Pa. 228, 766 A.2d 843, 846 (2001)]. Moreover, words and phrases may be added in construing a statute only when the added words are necessary to a proper interpretation, and so long as they do not in any way affect the statute's scope and operation. 1 Pa.C.S. § 1923(c).

*Commonwealth v. Hoke*, 599 Pa. 587, 962 A.2d 664, 667 (2009). However, and most importantly for our purposes, "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b).

In addition, when construing one section of a statute, courts may not read that section separately, but must read it together with and in light of the other sections comprising the statute. *Commonwealth v. Mayhue*, 536 Pa. 271, 639 A.2d 421, 439 (1994). Finally, a court may presume that the Legislature does not intend a result that is absurd, impossible

of execution, or unreasonable, and that the Legislature intends the entire statute to be effective and certain. 1 Pa.C.S. § 1922(1); *Commonwealth v. Bavusa,* 574 Pa. 620, 832 A.2d 1042, 1050 (2003).

An application of these precepts to the instant matter leads me to conclude that the Majority has erred in interpreting 75 Pa.C.S. § 3802(a)(1) as requiring proof of intoxication while driving. A review of the entire statute and the Legislature's incorporation of the word **after** into the statute indicates that, in enacting Section 3802(a)(1), the Legislature intended to prohibit driving, operating, or being in actual physical control of a motor vehicle **following** the drinking of an amount of alcohol such that one is rendered incapable of safe driving, and not merely driving while intoxicated. The Legislature's use of the word "**after**" in Subsection (a)(1) and in the other parts of Section 3802 cannot be ignored or overlooked. The fact that the other parts of the statute also contain the word "**after**" demonstrates that the Legislature clearly and plainly intended in Section 3802(a)(1) to punish driving **after** drinking. Given that the Legislature chose to include this language in 75 Pa.C.S. § 3802(a)(1), it is my opinion that the Legislature intended that 75 Pa.C.S. § 3802(a)(1) criminalize the consumption of an amount of alcohol such that it renders a person incapable of driving safely within a reasonable time **after** the consumption of alcohol and not merely driving while intoxicated.

That the Legislature intended Section 3802(a)(1) to punish driving **after drinking** and not merely driving **while intoxicated** is evidenced by the legislative history of Act 24. The Commonwealth points out that Act 24 was enacted in place of the prior DUI law to end the need for a battle of experts to determine whether a person was inebriated while actually driving, which arose out of the absorption and dissipation rates of alcohol in the body. Commonwealth's Brief, 31–32. *See also* COM. OF PENN. LEGIS. JOURNAL–HOUSE, Sept. 29, 2003, at 1889; *Commonwealth v. MacPherson,* 561 Pa. 571, 752 A.2d 384, 387 n. 3 (2000). Moreover, the intent of the Legislature to punish driving after drinking is evidenced by the Legislature's amendment of the DUI statute itself.

The law provides that a change in the language of a statute ordinarily indicates a change in the legislative intent, *Masland v. Bachman*, 473 Pa. 280, 374 A.2d 517, 521 (1977), and that the Legislature must be presumed to have intended every word of a statute to have effect. *Commonwealth v. Driscoll*, 485 Pa. 99, 401 A.2d 312, 315 (1979). Thus, under the law it must be presumed that by amending the statute, the Legislature intended to punish more than driving while intoxicated. Had it been the intent of the Legislature to keep the *status quo*, it easily could have left Section 3802(a)(1) unchanged from its predecessor statute, 75 Pa.C.S. § 3731(a)(1) (repealed).[3] The fact that the Legislature discarded the "**while driving**" language utilized in 75 Pa.C.S. § 3731(a)(1) and replaced it with the current "**after imbibing**" version of Section 3802(a)(1) manifests that the Legislature intended to punish driving after drinking and not merely driving while intoxicated as the prior statute did.

Accordingly, I would hold that in order to convict a person of violating 75 Pa.C.S. § 3802(a)(1), the Commonwealth need only prove: 1) imbibing an amount of alcohol sufficient to render a person incapable of safe driving; and 2) proof of driving, operating, or being in actual physical control of the movement of a vehicle within a reasonable amount of time **after** the ingestion of a requisite amount of alcohol sufficient to render a person incapable of safe driving.[4] I otherwise join the result reached by the Majority as I agree that the Commonwealth has proved guilt under either interpretation of the statute.[5]

---

**3.** The former statute at 75 Pa.C.S. § 3731(a)(1) and (a)(4) proscribed driving "**while** under the influence of alcohol to a degree which renders a person incapable of safe driving," or driving "**while** the amount of alcohol by weight in the blood of the person is 0.10% or greater."

**4.** Although the Legislature did not include a temporal component in Section 3802(a)(1), it is necessary that there be a temporal nexus between the drinking and the driving or else our interpretation of the statute could lead to the absurd result that a person would be in violation of Section 3802(a)(1) if that person **ever** consumed an amount of alcohol rendering that individual incapable of safe driving.

**5.** I agree with the Majority that in order to obtain a conviction under Section 3802(a)(1), the Commonwealth is not required to present evidence establishing when a person last consumed alcohol.

Justice EAKIN, concurring.

I concur in the result reached by my colleagues, but I respectfully disagree with both the majority's and Madame Justice Greenspan's interpretation of 75 Pa.C.S. § 3802(a)(1). I agree with Madame Justice Greenspan that under § 3802(a)(1), the Commonwealth need not prove the driver's condition at the moment of driving, but I reach that conclusion through different reasoning.

"When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b). The statute at issue is not free from all ambiguity. When a statute is ambiguous, our object in interpreting it "is to ascertain and effectuate the intention of the General Assembly." *Id.,* § 1921(a). In furtherance of that effort, we may consider, among other things:

(1) The occasion and necessity for the statute.

(2) The circumstances under which it was enacted.

(3) The mischief to be remedied.

(4) The object to be attained.

(5) The former law, if any, including other statutes upon the same or similar subjects.

(6) The consequences of a particular interpretation.

(7) The contemporaneous legislative history.

(8) Legislative and administrative interpretations of such statute.

*Id.,* § 1921(c). We may also presume "[t]hat the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable." *Id.,* § 1922(1).

Section 3802(a)(1) states, "An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle." 75 Pa.C.S. § 3802(a)(1). This statute is ambiguous because the word "after" can be defined in more than one way,

and does not express a clear requirement of temporal concurrence of driving and incapability. One could read this statute to mean that once one imbibes to the requisite level, one may never drive again, for any subsequent driving would literally be "after" the imbibing. Such an interpretation, however, would be absurd. Clearly, this is not what "after" means here.

"After" can mean literally any time following the event. *See* Webster's New Universal Abridged Dictionary 34 (2d deluxe ed. 1983). This definition is appropriate when interpreting statements such as "After the Civil War, slavery was abolished." But "after" can also require proximity, meaning "next to." *See id.* If a baseball fan asks, "Who bats after Rollins?," the answer is Victorino. In one sense, everyone in the lineup bats after Rollins—indeed, Rollins eventually bats after himself—but in this context, "after" means "next," and that is clearly the meaning of the word "after" in this statute. The driving must be temporally proximate to imbibing to the requisite degree; once the requisite inability to drive safely passes as sobriety returns, driving is no longer proximate and one may drive without offending the statute.

However, under § 3802(a)(1), there is no need for proof that inability coexisted with the time of driving. There is only need for proof of imbibing to the requisite degree and the temporally proximate "after" event of driving. Unlike under the prior statute, the two events need not intersect; the proof required is that driving occurred after drinking.

The statutory changes eliminated proof of condition at time of driving, previously an element of the offense. Rather than effectuating the legislature's clear purpose of condemning driving after too many drinks, the prior element was too often dependent on almost whimsical expert opinion testimony. Cases such as the present one show the salient purpose of the modification to the law that eliminated that element. The officer found a one-car accident but could not tell precisely when it happened; he could make an educated guess about the time of driving, but he could not be specific. He knew the driver had been imbibing before the accident—he had physical

evidence, an admission, and eventually blood alcohol content test results. The officer could clearly opine the driver was incapable of safely driving at the time the officer arrived, which was after the imbibing. However, to opine that the driver was likewise incapacitated at the time of driving would require some degree of speculation, as the officer did not see the driver while he was driving. Common sense would force the conclusion that incapacity and driving coexisted, but proving the obvious was often problematic, if not impossible. The legislature eliminated this loophole by making it illegal to drink to this extent and drive thereafter; no proof the two coexisted is needed.

This does not mean the prosecution's burden is absolved. There still must be proof of incapacity, that drinking preceded the driving, and that the pre-driving imbibing caused the incapacity. All that is removed from § 3802 is the need to "relate back" to a precise time of driving. This was the very concept behind the language modification in the DUI statutes, and I respectfully dissent from the contrary interpretation espoused by my colleagues.