J-S41013-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ZACHARY ALAN BAYLER, | |
| Appellant | No. 3173 EDA 2015 |

Appeal from the Judgment of Sentence October 20, 2015
In the Court of Common Pleas of Montgomery County
Criminal Division at No(s): CP-46-CR-0001325-2015

BEFORE: BENDER, P.J.E., DUBOW, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BENDER, P.J.E.: **FILED JULY 14, 2016**

Appellant, Zachary Alan Bayler, appeals from the judgment of sentence of three to six months' incarceration, imposed after he was convicted of driving under the influence (DUI) - general impairment, 75 Pa.C.S. § 3802(a)(1), and speeding, 75 Pa.C.S. § 3361(a)(3). Appellant challenges the sufficiency of the evidence to support his DUI conviction. After careful review, we affirm.

Appellant was charged with the above-stated offenses and proceeded to a non-jury trial on July 20, 2015. There, Officer Andrew Adams of the Plymouth Township Police Department testified that he was conducting routine patrol when he observed Appellant's silver Mercedes traveling "much

---

[*] Former Justice specially assigned to the Superior Court.

faster if not double the posted speed limit." N.T. Trial, 7/20/15, at 4, 5-6. Officer Adams immediately activated his lights and siren and began following Appellant's car. *Id.* at 7. As the officer pursued Appellant's car for approximately one-half mile, he observed Appellant "swerve[] two times from the direct travel lane into the turning lane." *Id.* at 8, 9. Once Appellant stopped his vehicle and Officer Adams made contact with him, the officer noticed Appellant "had red glassy eyes" and "an odor of alcoholic beverage coming from what appeared to be his person." *Id.* at 6, 7. Officer Adams further testified that Appellant "had severely slurred speech." *Id.* at 7.

Officer Andrew Monaghan of the Plymouth Township Police Department also testified at trial, stating that he responded to Officer Adams' traffic stop of Appellant's vehicle. *Id.* at 15. Officer Monaghan, who has training in the detection of impaired drivers, explained that when he came into contact with Appellant, he noticed an odor of alcohol emanating from Appellant's person, and observed that Appellant's eyes were glassy and bloodshot. *Id.* at 15, 17. The officer also noticed that Appellant was "slurring his speech." *Id.* at 17. Officer Monaghan asked Appellant if he had been drinking, and Appellant admitted that "he had [consumed] two beers." *Id.*

The officer further testified that he conducted three field sobriety tests with Appellant, including "the fingertip to the tip of [the] nose[,]" the "nine steps heel to toe[,]" and "the one leg stand" tests. *Id.* at 17-18. During the "finger to nose test," Officer Monaghan observed that Appellant "was

swaying and he was having a hard time maintaining his balance." *Id.* at 18. Officer Monaghan also testified that during the next "heel to toe contact" test, Appellant "failed to make heel to toe contact and also … took ten steps out, nine steps back and the entire time he did not count his steps." *Id.* at 18. Finally, the officer asked Appellant to perform the "one legged stand" test. Officer Monaghan described Appellant's performance on this test, as follows:

> [Officer Monaghan]: On that night [Appellant] raised his … right foot off the ground first. He was able to hold his foot off the ground for approximately three to four seconds before placing it down. He then tried the test again. He raised it up, again, once again he maintained about three to four seconds before placing it on the ground. At which point he then advised me that he had broken his left ankle at some point and I advised him that he could then lift his left leg off the ground and stand on his right leg. At which point he advised me again that he had broke [*sic*] his left leg and he refused to continue with the test.

*Id.* at 19. Based on Appellant's performance on these three field sobriety tests, and considering "the smell of alcohol, the glassy bloodshot eyes, [and] the slurred speech," Officer Monaghan concluded that Appellant was committing the offense of DUI. Thus, Appellant was arrested and taken to the police department. *Id.*

Once there, Appellant was asked to submit to a certified breath test. *Id.* at 20. In response, Appellant asked to speak to an attorney. *Id.* Officer Monaghan informed Appellant "that he has no right to speak to an attorney or ask to talk to anyone else[,]" but Appellant again asked to talk

to an attorney. *Id.* The officer then asked Appellant if he was refusing the test, and Appellant responded, "yes." *Id.* at 21.

Based on this evidence, the trial court convicted Appellant of DUI and speeding.[1] On October 20, 2015, the court sentenced him to three to six months' imprisonment, as well as to fines and court costs.[2] Appellant filed a timely notice of appeal, and also timely complied with the trial court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Herein, he presents one issue for our review:

> Whether Appellant's conviction of [DUI-]Incapable of Safely Driving must be reversed where the record indicates that the trial judge, sitting as fact finder, concluded that under the law, a fact finder had no choice but to find Appellant guilty of [DUI] because Appellant refused to submit to blood alcohol testing, where there was otherwise insufficient evidence for the judge to make a determination as to whether or not Appellant was impaired beyond a reasonable doubt?

Appellant's Brief at 5.

Preliminarily, we note that,

_____

[1] We note that in rendering its verdict, the trial court stated that it was "totally disregard[ing]" the evidence about field sobriety tests performed on Appellant, as Appellant testified at trial that he had a medical condition that impacted his ability to perform those tests. *See* N.T. Trial at 45-46, 48 (Appellant's testifying regarding his medical condition); *Id.* at 59-60 (court's explaining it would not consider the evidence regarding the field sobriety tests).

[2] Appellant's sentence of incarceration stemmed from the fact that this was his second DUI offense, and he refused to take a breathalyzer test. *See* 75 Pa.C.S. § 3804(c)(2)(i) (setting forth a minimum sentence of 90 days under such circumstances).

[a]s a general matter, our standard of review of sufficiency claims requires that we evaluate the record "in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence." "Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt." Nevertheless, "the Commonwealth need not establish guilt to a mathematical certainty." Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Accordingly, "[t]he fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence." Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld.

*Commonwealth v. Rahman*, 75 A.3d 497, 500-01 (Pa. Super. 2013)

(internal citations omitted).

Here, Appellant challenges his conviction for DUI under section 3802(a)(1), which states:

**(a) General impairment.--**

(1) An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle.

75 Pa.C.S. § 3802(a)(1). This Court has also explained:

"[S]ubsection 3802(a)(1) is an 'at the time of driving' offense, requiring that the Commonwealth prove the following elements: the accused was driving, operating, or in actual physical control of the movement of a vehicle during the time when he or she was rendered incapable of safely doing so due to the consumption of alcohol." *Commonwealth v. Segida*, 604 Pa. 103, 114–116, 985 A.2d 871, 879 (Pa.2009). With respect to the type, quantum, and quality of evidence required to prove a general impairment violation under Section 3802(a)(1), the Pennsylvania Supreme Court in *Segida* continued:

> Section 3802(a)(1), like its predecessor [statute], is a general provision and provides no specific restraint upon the Commonwealth in the manner in which it may prove that an accused operated a vehicle under the influence of alcohol to a degree which rendered him incapable of safe driving.... The types of evidence that the Commonwealth may proffer in a subsection 3802(a)(1) prosecution include but are not limited to, the following: the offender's actions and behavior, including manner of driving and ability to pass field sobriety tests; demeanor, including toward the investigating officer; physical appearance, particularly bloodshot eyes and other physical signs of intoxication; odor of alcohol, and slurred speech. Blood alcohol level may be added to this list, although it is not necessary and the two hour time limit for measuring blood alcohol level does not apply. Blood alcohol level is admissible in a subsection 3801(a)(1) case only insofar as it is relevant to and probative of the accused's ability to drive safely at the time he or she was driving. The weight to be assigned these various types of evidence presents a question for the fact-finder, who may rely on his or her experience, common sense, and/or expert testimony. Regardless of the type of evidence that the Commonwealth proffers to support its case, the focus of subsection 3802(a)(1) remains on the inability of the individual to drive safely due to consumption of alcohol-not on a particular blood alcohol level.

*Id.* at 115–116, 985 A.2d at 879.

*Commonwealth v. Teems*, 74 A.3d 142, 145 (Pa. Super. 2013).

In challenging the sufficiency of the evidence in the present case, Appellant essentially attacks the basis upon which the court allegedly premised its verdict. Specifically, he avers that,

> [t]he trial judge found [him] guilty based upon an error of law under which the court believed it had no[] choice but to adjudge Appellant guilty due to his failure to submit to [breathalyzer] testing. While the trial judge concluded that Appellant's blood shot eyes, slurred speech and smell of alcohol gave probable cause to arrest [Appellant], [the court] acknowledged that other than the foregoing indicia of impairment, there was no evidence to permit the court to make any further determination as to whether Appellant was impaired. In this regard the trial judge indicated that while she could conclude that the indicia of impairment established probable cause, she could not conclude based upon the evidence presented that Appellant was impaired beyond a reasonable doubt as to find Appellant guilty of [DUI-] Incapable of Safely Driving.
>
> On the contrary, the trial judge's finding of guilt was predicated on her mistaken belief that a fact[-]finder had no choice but to find Appellant guilty because he refused to submit to blood or breath testing when police had probable cause to arrest [Appellant] for driving under the influence. The judge's legal error in this regard is no different than if the judge sitting with a jury instructed the jury that they must find [Appellant] guilty if the police had probable cause to arrest him for [DUI] and if they concluded that Appellant refused Blood Alcohol Testing. Such a standard of law contravenes the well-established burden of proof in a criminal trial and the provisions of 75 Pa.C.S. § 1547(e) which prohibit presumptions based upon an accused's refusal of testing.

Appellant's Brief at 16-17.

Initially, Appellant's comparison of his case to a court's providing a jury with a legally incorrect instruction is unavailing. We are not reviewing the propriety of the court's jury instructions; instead, we are evaluating the sufficiency of the evidence to sustain Appellant's conviction. Our standard of

review of a sufficiency claim does not include an assessment of the reasons for the fact-finder's verdict, which is precisely what Appellant is asking us to do in this case.[3]  Rather, it is well-settled that in reviewing a sufficiency

_____

[3] In any event, we note that Appellant's interpretation of the court's reasoning is questionable.  In rendering its verdict, the court stated, in pertinent part:

> [The Court:] [T]his Court has heard overwhelming evidence, consistent evidence, that there was slurred speech, red, glassy, bloodshot eyes, an odor of alcohol about the person that would give or justifiably or even reasonably give an officer reasonable suspicion or cause to make an arrest in this matter.
>
> …
>
> So today I have heard convincing evidence … that there was probable cause for an arrest in this matter, but I don't have anything other than the indicia of impairment to tell me whether or not [Appellant] was intoxicated or impaired, and that's because [Appellant] refused [testing].  So there is a statute for that and in that case this statute is captured under Count 1 of the criminal charge in this matter, which is 1325 of 2015.  On that Bill of Information it states 3804(c) where [Appellant] refused testing of the blood, and in this case that happened, so I have to find you guilty of that because it happened.  I haven't heard anything where it didn't happen, and I heard credible testimony and evidence that you did refuse the request for blood.
>
> So I find you guilty, [Appellant], of Count 1 [DUI] based on the evidence that was presented before me.

N.T. Trial, 7/20/15, at 60-61.

The court's statement, read as a whole, is rather confusing.  Again, Appellant interprets the court's remarks as indicating that the court believed it must *convict him* of DUI simply because he refused the breathalyzer test.  However, an equally reasonable interpretation of the court's statement, especially considering the court's reference to 75 Pa.C.S. § 3804(c)
*(Footnote Continued Next Page)*

claim, we are required to evaluate the record, in the light most favorable to the verdict winner, and to determine if the evidence proved each material element of the crime charged beyond a reasonable doubt. *See Teems*, 74 A.3d at 145. Having done so in this case, we easily conclude that the evidence was sufficient to convict Appellant of DUI under section 3802(a)(1).

Namely, the testimony of Officer Adams established that Appellant's vehicle was speeding, and Appellant twice swerved into the turning lane while the officer was following him. Both Officers Adams and Monaghan noticed a smell of alcohol on Appellant's person, and observed that his eyes were glassy, red, and bloodshot, and he was slurring his speech. Appellant also admitted that he was drinking that evening. He then failed two field

---
*(Footnote Continued)* ─────────────

(discussing the *penalties* where the defendant refused testing of blood or breath), is that the court was explaining why it *must* conclude that Appellant *refused chemical testing*, thus triggering the penalty provisions set forth in section 3804(c). The court's discussion, in its Rule 1925(a) opinion, regarding why it found the evidence sufficient to convict Appellant of DUI, supports our interpretation, rather than Appellant's. *See* Trial Court Opinion (TCO), 12/12/15, at 4 (discussing the totality of evidence that proved Appellant committed DUI, including the officers' testimony regarding Appellant's driving, his physical appearance and smell, his admission to drinking, and his refusal to submit to a breathalyzer). Moreover, the court was permitted to consider Appellant's refusal to submit to a breathalyzer as evidence of his guilt. *See* 75 Pa.C.S. § 1547(e) (permitting the defendant's failure to submit to chemical testing to be admitted as evidence where the defendant is charged with a violation of section 3802, and stating that such evidence "may be considered along with other factors concerning the charge").

sobriety tests, and essentially refused to participate in a third.[4] Based on his performance on those tests, and Officer Monaghan's observations of Appellant's physical appearance, his slurred speech, and the odor of alcohol emanating from his person, the officer concluded that Appellant was DUI. After Appellant was arrested, he refused to take a breathalyzer test to establish his level of intoxication. This evidence was sufficient to demonstrate that Appellant was driving a vehicle when he was incapable of safely doing so due to the consumption of alcohol. *See Commonwealth v. Hartle*, 894 A.2d 800, 804 (Pa. Super. 2006) (finding sufficient evidence to sustain Hartle's conviction of DUI (general impairment) where an officer testified that Hartle's breath smelled of alcohol, his eyes were bloodshot and glassy, he kept repeating himself, he refused to participate in field sobriety tests or take a breath test, and he swayed when standing outside his vehicle).

Judgment of sentence affirmed.

---

[4] The trial court's decision to "totally disregard the field sobriety tests" was essentially an assignment of weight (or lack thereof) to that evidence. However, in reviewing a sufficiency claim, we consider "*all the evidence* admitted at trial…." *Commonwealth v. Pruitt*, 951 A.2d 307, 313 (Pa. 2008) (citations omitted; emphasis added).

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/14/2016