J-S83009-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| JOSEPH D. CAMILLERI, | : | |
| Appellant | : | No. 1398 EDA 2017 |

Appeal from the Judgment of Sentence April 3, 2017
In the Court of Common Pleas of Lehigh County Criminal Division at No(s):
CP-39-CR-0003483-2016

BEFORE:  GANTMAN, P.J., OLSON, J., and DUBOW, J.

MEMORANDUM BY DUBOW, J.:                    **FILED JUNE 07, 2018**

Joseph Camilleri ("Appellant") appeals from the Judgment of Sentence entered after his conviction of one count of DUI–General Impairment (2nd Offense) and the summary offense of Accident Involving Damage to Unattended Vehicle or Property.[1]  He challenges the sufficiency of the evidence supporting the DUI conviction.  After careful review, we affirm.

The facts, as gleaned from the certified record, are as follows.  Around 5:00 p.m. on April 23, 2016, Jason Urban, a patron at the Westgate Mall in Bethlehem, saw Appellant exit the mall and watched as he walked unsteadily to his car.  He then watched Appellant maneuver out of his parking spot and back into an unattended SUV.  Mr. Urban stopped Appellant and told him to

_____

[1] 75 Pa.C.S. § 3802(a)(1) (incapable of safe driving) and 75 Pa.C.S. § 3745(a), respectively.

leave his contact information for the driver of the hit vehicle. Appellant, who was slurring his speech, got out of his car, losing his slipper in the process. Appellant walked right past his slipper and looked at the bumper of the vehicle he had hit. He then asked Mr. Urban for a pen, and got back in his vehicle, ostensibly to retrieve a pen. Instead, he drove out of the parking lot in a zig-zag manner. Believing Appellant to be under the influence of alcohol, Mr. Urban noted the license plate number of Appellant's vehicle and contacted the City of Bethlehem Police Department. Immediately, Officer Jason Ebert went to the Westgate Mall to speak with Mr. Urban; Officer Jason Gerstner was dispatched to Appellant's home.

Approximately ten minutes after the call came in, Officer Gerstner arrived at Appellant's home but Appellant's car was not there. In the meantime, Officer Ebert finished his conversation with Mr. Urban, and approximately 30 minutes after receiving the dispatch to the mall, drove to Appellant's nearby residence and located Appellant's vehicle now in the driveway. After noticing that the bumper had fresh scrapes, Officer Ebert knocked on Appellant's door. Appellant came to the door in a t-shirt, boxer shorts, and socks, and admitted that he had hit the car in the parking lot at the mall. During their conversation, Officer Ebert observed Appellant swaying, slurring his speech, and reeking of alcohol. Appellant told the officers that he had had one beer. The officers conducted field sobriety tests

on Appellant, the first two of which he failed.[2]  Appellant refused to participate in the third field test and became belligerent, swearing at the officers and calling them names.  The officers placed Appellant in custody and drove him to the DUI Booking Center.  When the phlebotomist arrived to draw blood, Appellant became irate and uncooperative again.[3]  On May 23, 2016, the Commonwealth charged Appellant with two DUI offenses and two summary offenses.

On February 8, 2017, a bench trial proceeded on DUI–General Impairment (2nd Offense), 75 Pa.C.S. § 3802(a)(1), and Accident Involving Damage to Unattended Vehicle or Property, 75 Pa.C.S. § 3745(a).[4]  Mr. Urban testified regarding his observations of Appellant and the car accident, noting that although he had not smelled alcohol on Appellant's breath, he did observe him walking fitfully, slurring his words, and driving erratically,

---

[2] Appellant told officers he had an injured knee, but was unable to tell them which knee was injured.

[3] The record contains no indication that blood was actually drawn.  However, that fact is irrelevant to the determination of whether Appellant was impaired or incapable of safe driving in violation of 75 Pa.C.S. § 3802(a)(1). **See Commonwealth v. Segida**, 985 A.2d 871, 879 (Pa. 2009) (noting that the focus of 75 Pa.C.S. § 3802(a)(1) "remains on the inability of the individual to drive safely due to consumption of alcohol—not on a particular blood alcohol level.").

[4] Although the Commonwealth originally charged Appellant with other DUI offenses, the Commonwealth amended the Complaint prior to trial to include just one DUI–General Impairment charge, in addition to the summary offenses related to the accident.

and concluded that Appellant's "actions were that of someone who was intoxicated." N.T., 2/8/17, at 9. He stated that he "was worried that [Appellant] was going to hit somebody or there was going to be a bigger problem that day." *Id*. at 10. Mr. Urban further testified that he has had experience with drunk people at weddings, parties, or bars, and would not have let Appellant drive away because Mr. Urban believed that Appellant was too intoxicated to drive. *Id*. at 11.

Officers Ebert and Gerstner testified regarding the investigation of the car accident, including their observations of Appellant's inebriated demeanor at his home and at the DUI Center. The court also watched two videos from the DUI Booking Center showing Appellant acting, among other things, belligerently.

When the Commonwealth closed its case, Appellant moved for a Judgment of Acquittal, which the court denied. Appellant then testified that he had had one to two beers earlier in the day before the mall incident, and that he had driven away from the accident in the mall parking lot because he "panicked" and "was scared." *Id*. at 53. Appellant had difficulty providing a time line as to when he drank the beers and when he returned home. He also testified that he had one beer when he got home from the mall.

An investigator for the public defenders' office testified that he spoke with the woman who owned the damaged vehicle. He testified that her car had been slightly scraped, and she and her husband repaired the damage themselves without submitting a claim to the insurance company.

The trial court found Appellant guilty of the DUI—General Impairment charge and the summary offense of Accident Involving Damage to Unattended Vehicle or Property. The court subsequently sentenced Appellant to a term of 6 months' intermediate punishment with the first 45 days on house arrest, and fines of $750 for the DUI and $300 for the summary offense.

Appellant timely appealed. Both he and the trial court complied with Pa.R.A.P. 1925.

Appellant presents the following issue for our review:

Whether the Commonwealth presented sufficient evidence that [Appellant] was under the influence of alcohol such that he was incapable of safe driving at trial to sustain the driving under the influence charge?

Appellant's Brief at 4.

Appellant challenges the sufficiency of the evidence supporting the conviction of DUI-General Impairment. Our review is informed by the following standards:

When reviewing a challenge to the sufficiency of the evidence, we must determine if the Commonwealth established beyond a reasonable doubt each of the elements of the offense, considering the entire trial record and all of the evidence received, and drawing all reasonable inferences from the evidence in favor of the Commonwealth as the verdict-winner. The Commonwealth may sustain its burden of proof by wholly circumstantial evidence.

*Commonwealth v. Segida*, 985 A.2d 871, 880 (Pa. 2009) (citations omitted). "It is not within the province of this Court to re-weigh the

evidence and substitute our judgment for that of the fact-finder." ***Commonwealth v. Izurieta***, 171 A.3d 803, 806 (Pa. Super. 2017) (citations omitted).

The court found Appellant guilty of DUI-General Impairment, 75 Pa.C.S. § 3802(a)(1), which provides that "[a]n individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle."  As our Supreme Court concluded, "[f]or subsection 3802(a)(1), the only relevant time period is that span of time during which an individual is incapable of safely driving due to alcohol intoxication."  ***Segida***, 985 A.2d at 878.

"The types of evidence that the Commonwealth may proffer in a subsection 3802(a)(1) prosecution include[,] but are not limited to . . . the offender's actions and behavior, including manner of driving[;] … demeanor, including toward the investigating officer; physical appearance, particularly bloodshot eyes and other physical signs of intoxication; odor of alcohol, and slurred speech."  ***Id***. at 879.  The Commonwealth is not required to prove that the suspect drank no alcohol after the accident.  ***Id.*** at 879 n.6.

Appellant avers that because he consumed alcohol in the brief period of time after he returned from the mall before the officers appeared at his home, the officers' observations of his behavior "have no evidentiary value

in determining whether [Appellant] was incapable of safe driving due to consumption of alcohol at the time of the accident." *Id*. at 11. He also asserts that "Mr. Urban, a lay witness, is the only witness who actually observed [Appellant] at the time he drove the motor vehicle" and he has "no training in identifying intoxicated individuals or determining whether someone is incapable of driving safely due to alcohol." *Id*. Appellant thus concludes the evidence was insufficient to sustain the conviction of DUI. *Id*.

We disagree. The testimony from Mr. Urban, found credible by the trial court, established that Appellant was impaired, as manifested by his slurring, wavering gait, and apparent unawareness of his fallen footwear prior to walking unsteadily around his vehicle to look at the damage to the other car. Moreover, Mr. Urban watched as Appellant backed his vehicle into a parked car, and as he shortly thereafter drove in a zig-zag out of the mall parking lot.

In addition, police officers saw Appellant within 35 minutes after the accident (and approximately 20 minutes after Appellant had returned home), where Appellant admitted that he had had two beers during the afternoon before he got in his car to leave the mall, and admitted that he had backed into the unattended car at the mall. While the police officers did not see Appellant drive, they testified that they did arrive a very short time later at Appellant's house and observed his drunken demeanor and physical state. Contrary to Appellant's contention, the officers' testimony about their

observations is relevant as it tends to corroborate Mr. Urban's testimony that Appellant was in an inebriated and impaired state.

The trial court, as factfinder, weighed the evidence and made its credibility determinations accordingly. This Court will not reweigh that evidence or disturb the trial court's credibility determinations.

In light of the foregoing, we conclude that the verdict was supported by sufficient evidence. Accordingly, we affirm the Judgment of Sentence.

Judgment of Sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/7/18