J-S34005-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| KISHA D. TAYLOR-DORSETT | |
| Appellant | No. 858 WDA 2013 |

Appeal from the Judgment of Sentence April 23, 2013
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0013085-2011

BEFORE: GANTMAN, P.J., BENDER, P.J.E., and OTT, J.

MEMORANDUM BY OTT, J.:                         **FILED AUGUST 27, 2014**

Kisha D. Taylor-Dorsett appeals from the judgment of sentence entered April 23, 2013, in the Allegheny County Court of Common Pleas. The trial court imposed a sentence of four days in a DUI-Alternative to Jail program,[1] and a concurrent six months' probation for her conviction of two counts of DUI-general impairment,[2] and related summary traffic offenses. On appeal, Taylor-Dorsett challenges the sufficiency of the evidence supporting her convictions of DUI. For the reasons set forth below, we affirm.

---

[1] The parties refer to this program as the "DUI Hotel."

[2] 75 Pa.C.S. § 3802(a)(1).

On July 20, 2011, at approximately 2:30 a.m., Officer William Meisel, of the Brentwood Borough Police Department, initiated a traffic stop of the vehicle Taylor-Dorsett was driving. The facts surrounding the traffic stop and Taylor-Dorsett's arrest are summarized by the trial court, in its opinion, and we need not reiterate them in detail herein. **See** Trial Court Opinion, 2/6/2013, at 2-5.

As a result of the stop, Taylor-Dorsett was charged with two counts of DUI-under the influence of alcohol, two counts of DUI-under the influence of a controlled substance, and one count each of driving on right side of roadway and driving on roadways laned for traffic.[3] At the conclusion of a bench trial on January 29, 2013, the trial court found Taylor-Dorsett not guilty of the charges of DUI-under the influence of a controlled substance, but guilty of the remaining charges.[4] She was sentenced on April 23, 2013, to a term of four days in a DUI-Alternative to Jail Program, and six months

_____

[3] 75 Pa.C.S. §§ 3802(a)(1) (two counts), 3802(d)(2), 3802(d)(3), 3301(a), and 3309(1), respectively.

[4] We note that Taylor-Dorsett's trial testimony contradicted most of the testimony of the arresting officer, Brentwood Borough Police Officer William Meisel. Indeed, Taylor-Dorsett testified: (1) she was at a stop light when the officer first activated his lights; (2) she never stopped in the center turn lane; (3) she never told the officer she had smoked marijuana; and (4) she completed the field sobriety tests properly. **See** N.T., 1/29/2013, at 25-27. She stated twice during her testimony that Officer Meisel was lying. **See id.** at 27, 28.

concurrent probation, for one count of DUI. No further penalty was imposed on the remaining charges. This timely appeal followed.[5]

The sole issue raised by Taylor-Dorsett on appeal is a challenge to the sufficiency of the evidence supporting her convictions of DUI. Specifically, she argues the Commonwealth failed to prove she was under the influence of alcohol to a degree that rendered her incapable of safe driving where she was "stopped for minor traffic infractions, [was] able to follow the officer's instructions and drive to where she was told to, [was] able to comprehend and perform a substantial portion of field sobriety tests, is physically effected by a diagnosis of multiple sclerosis, and [her] blood alcohol content is unknown." Taylor-Dorsett's Brief at 13.

Our review of a challenge to the sufficiency of the evidence is well-established:

> We must determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, when viewed in a light most favorable to the Commonwealth as verdict winner, support the conviction beyond a reasonable doubt. Where there is sufficient evidence to enable the trier of fact to find every element of the crime has been established beyond a reasonable doubt, the sufficiency of the evidence claim must fail.

_____

[5] On May 23, 2013, the trial court ordered Taylor-Dorsett to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). After requesting, and being granted, an extension of time, Taylor-Dorsett complied with the court's directive and filed a concise statement on July 18, 2013.

> The evidence established at trial need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented. It is not within the province of this Court to re-weigh the evidence and substitute our judgment for that of the fact-finder. The Commonwealth's burden may be met by wholly circumstantial evidence and any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

*Commonwealth v. Mobley*, 14 A.3d 887, 889-890 (Pa. Super. 2011) (citation omitted).

To secure a conviction of DUI-general impairment, the Commonwealth must prove beyond a reasonable doubt that the defendant was driving a vehicle "after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving … the vehicle." 75 Pa.C.S. § 3802(a)(1).

> The types of evidence that the Commonwealth may proffer in a subsection 3802(a)(1) prosecution include but are not limited to, the following: the offender's actions and behavior, including manner of driving and ability to pass field sobriety tests; demeanor, including toward the investigating officer; physical appearance, particularly bloodshot eyes and other physical signs of intoxication; odor of alcohol, and slurred speech. Blood alcohol level may be added to this list, although it is not necessary[.] … The weight to be assigned these various types of evidence presents a question for the fact-finder, who may rely on his or her experience, common sense, and/or expert testimony. Regardless of the type of evidence that the Commonwealth proffers to support its case, the focus of subsection 3802(a)(1) remains on the inability of the individual to drive safely due to consumption of alcohol-not on a particular blood alcohol level.

*Commonwealth v. Segida*, 985 A.2d 871, 879 (Pa. 2009).

The trial court, which sat as fact finder in Taylor-Dorsett's nonjury trial, provides a thorough and well-reasoned discussion of the facts supporting the guilty verdict in its opinion. In particular, the court found that Taylor-Dorsett's "failures on the [field sobriety tests] were not a result of physical symptoms of MS, but rather manifested [Taylor-Dorsett's] inability to mentally process, comprehend and follow instructions, as well as her inability to use basic sequential ordering." Trial Court Opinion, 12/6/2013, at 7-8. Indeed, the trial court opined that Taylor-Dorsett's impairment was "more consistent" with alcohol consumption than MS. *Id.* at 8. Further, the court found that Taylor-Dorsett's driving was sufficiently "concerning" to the officer to justify the traffic stop, and her response to the stop – pulling into the center turn lane of the highway – provided additional justification for the officer's concern. *Id.* at 10. The trial court opined:

> When the totality of [Taylor-Dorsett's] conduct is considered – from drifting out of her lane of travel several times to driving almost fully within the center turning lane to abruptly jerking her vehicle to correct its path of travel to stopping her vehicle in the middle of a highway – it becomes evident that [Taylor-Dorsett] was impaired and unable to safely operate her vehicle.

*Id.* at 11.

Our independent review of the transcript reveals ample support for the trial court's findings. Significantly, with respect to the contradictions in the testimony, the trial court, which sat as fact finder, "concluded that the

testimony of Officer Meisel was the most credible[,]"[6] a finding we will not disturb on appeal. **See Mobley**, **supra**. Therefore, we adopt the sound reasoning of the Honorable Beth A. Lazzara as dispositive of Taylor-Dorsett's challenge to the sufficiency of the evidence supporting her conviction of DUI. **See** Trial Court Opinion, 12/6/2013, at 7-11.

Because we find Taylor-Dorsett is not entitled to relief on the sole issue she raises on appeal, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  8/27/2014

---

[6] Trial Court Opinion, 12/6/2013, at 9.

IN THE COURT OF COMMON PLEAS

OF ALLEGHENY COUNTY, PENNSYLVANIA

COMMONWEALTH OF                              CRIMINAL DIVISION
PENNSYLVANIA,

v.                                           No. CR 2011-13085

KISHA TAYLOR-DORSETT,
Defendant.

## OPINION

This is a direct appeal following a non-jury trial before this court on January 29, 2013. The Defendant was charged with Driving Under the Influence of Alcohol or Controlled Substance (Impaired Ability; first offense) (75 Pa. C.S.A §3802(d)(2)), Driving Under the Influence of Alcohol or Controlled Substance (Combination Drugs/Alcohol; first offense) (75 Pa. C.S.A. §3802(d)(3)), Driving Under the Influence of Alcohol or Controlled Substance (Refusal; first offense) (75 Pa. C.S.A. §3802(a)(1)), Driving Under the Influence of Alcohol or Controlled Substance (General Impairment; first offense) (75 Pa. C.S.A. 3802(a)(1), and two (2) summary traffic offenses. This court found the Defendant not guilty of the DUI offenses charged under 75 Pa. C.S.A §3802(d)(2) and 75 Pa. C.S.A. §3802(d)(3), but guilty of the DUI offenses charged under 75 Pa. C.S.A. §3802(a)(1), refusal and general impairment. Sentencing was deferred for ninety (90) days. On April 23, 2013, this court sentenced the Defendant to four (4) days

confinement at Allegheny County's DUI Alternative to Jail program, a six (6) month period of probation, as well as all fines, court costs and DUI sentencing requirements.

The Defendant presented one issue in her Statement of Matters Raised on Appeal. However, it appears that this single issue contained in paragraph 7 of the Statement of Matters is actually multiple complaints of error. In order to thoroughly address the Defendant's complaints, this court considers that paragraph 7 contains the following statements of error: (1) there was insufficient evidence to convict the Defendant of DUI, (2) the court improperly weighed the credibility of the witnesses, and (3) the Defendant should not have been found to be unable to drive safely based on the arresting officer's limited observations of driving violations. This court will address all three (3) issues following a review of the facts of the case.

On July 20, 2011 at approximately 2:30 a.m., Officer William Meisel of the Brentwood Borough Police Department was heading north in a marked patrol car on Route 51/Saw Mill Run Boulevard, when he observed the Defendant driving a white SUV and traveling south on Route 51. (T.R. 4-6). As Officer Meisel observed the Defendant's vehicle, he saw the Defendant operate her vehicle so that it was straddling the yellow markers that divide the passing lane from the center turning lane. Officer Meisel promptly turned his patrol car around so as to proceed south in order to follow the Defendant's vehicle (T.R. 6). As he was approaching the Defendant's car, he saw the vehicle cross over between the passing lane and center turning lane on two (2)

2

more occasions. Further, he noted that the vehicle drifted three-quarters (¾) of the way into the turning lane before jerking abruptly back into the original lane of travel. (T.R. 7).

Officer Meisel turned on his lights and siren to initiate a traffic stop. He expected that the vehicle would pull to the right lane to stop. However, instead of pulling over to the right side of the road, the Defendant pulled into the center turning lane, stopping her vehicle in the middle of the highway. (T.R. 7-8, 16-17). The Defendant's car was impeding the flow of traffic as she was stopped in the turn lane, and Officer Meisel pulled behind her, walked up to her vehicle, obtained the Defendant's license and registration, and told her to pull into the parking lot on the right side of the highway. (T.R. 8).

When Officer Meisel approached the Defendant's vehicle in the parking lot and as he was speaking with her, he noted that the Defendant had glassy and bloodshot eyes, heard the Defendant slurring her speech, and smelled odors of alcoholic beverages and marijuana coming out of the car. (T.R. 9, 18). After making these observations, Officer Meisel asked the Defendant to step out of her vehicle. (T.R. 9, 18). As the Defendant exited her vehicle, Officer Meisel noted that she was unsteady on her feet. (T.R. 9). Based on his observations, Officer Meisel decided to proceed with Field Sobriety Tests. (FSTs). The FSTs were conducted in the parking lot, which was a flat, asphalt surface. Additionally, the weather conditions that night were dry and clear, (T.R. 9), and the Defendant was wearing flat, low-heeled sandals. (T.R. 11).

3

Prior to conducting the FSTs, Officer Meisel asked the Defendant whether she had any conditions that would impede her ability to perform these tests. (T.R. 11). He noted on his report that the Defendant indicated that she was able to perform the tests and that she was able to read, write and understand the English language. (T.R. 11). Officer Meisel placed a question mark next to the question about whether the Defendant was taking medication. Officer Meisel could not remember whether the Defendant even answered the question or whether she provided a "wishy-washy" answer. (T.R. 11).

Officer Meisel, who was trained to administer FSTs, conducted four (4) tests: (1) the HGN test, (2) the one-legged stand, (3) a counting backwards memory test, and (4) the walk and turn. (T.R. 10). While the Defendant was performing the one-legged stand test, she was unable to perform two (2) out of the four (4) instructions given by Officer Meisel, i.e., she used her arms for balance and stopped counting before she was instructed to do so. (T.R. 13). Officer Meisel observed that the Defendant's ability to follow and comprehend instructions was impaired. (T.R. 13). During the counting backwards test, Officer Meisel instructed the Defendant to count backwards from 103 and stop at 70. (T.R. 13). The Defendant was unable to perform this test as instructed, counting the numbers in the following sequence; 103, 98, 95, 96, 91, 89, 85, 86, 85, 78, 71. Based on the Defendant's performance on this test, Officer Meisel concluded that the Defendant's ability to follow instructions, calculate numbers and count sequentially was impaired. (T.R. 13-14). The final FST given by Officer Meisel was the walk and

4

turn test. The Defendant also was unable to successfully complete this test, beginning the test while Officer Meisel was still explaining it and improperly turning and stopping. (T.R. 12). At that time, the Defendant became argumentative and never completed the test. (T.R. 12).

During the course of contact with Officer Meisel, the Defendant admitted that she had smoked a controlled substance earlier in the day. It was the Defendant's belief that the controlled substance was no longer in her system at the time of the police stop. (T.R. 14). Observations of the vehicle also revealed a strong odor of alcohol in the vehicle itself, as well as a sloshing liquid in the driver's side compartment believed to be an alcoholic beverage. (T.R. 14-15).

Based on Officer Meisel's training and experience, and after his observations of the Defendant's driving, demeanor and performance on her FSTs, he believed that the Defendant was driving under the influence of alcohol or a controlled substance to a degree that would render her incapable of safe driving. (T.R. 15). Officer Meisel placed the Defendant under arrest. After she had been placed in handcuffs and was seated in the back of the patrol car, the Defendant stated that she believed that some of her failures on the FSTs may have resulted from her multiple sclerosis diagnosis. (T.R. 16). Officer Meisel transported the Defendant to Jefferson Regional Hospital for a blood draw, where the Defendant refused to consent to the blood draw. (T.R. 16).

5

On appeal, the Defendant argues that there was insufficient evidence to prove that the Defendant was driving under the influence. The standard of review regarding claims of insufficiency of the evidence is well-settled. In reviewing the sufficiency of the evidence, the appellate court must determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as the verdict winner, is sufficient to prove every element of the offense beyond a reasonable doubt. Com. v. Jones, 954 A.2d 1194 (Pa. Super. 2008).

An appellate court may not re-weigh the evidence and substitute its judgment for that of the fact-finder. Id. The weight of the evidence is exclusively for the finder of fact, who is free to believe all, part or none of the evidence and to determine the credibility of the witnesses. When evidence conflicts, it is the sole province of the fact finder to determine credibility and to believe all, part or none of the evidence. Com. v. Lyons, 833 A.2d 245, 258 (Pa. Super. 2003). An appellate court cannot substitute its judgment for that of the finder of fact and may only reverse the lower court's verdict if it is so contrary to the evidence as to shock one's sense of justice. Com. v. Hunzer, 868 A.2d 498, 506 (Pa. Super. 2005). Any question of doubt is for the fact-finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances. Com. v. Perez, 931 A.2d 703 (Pa. Super. 2007).

It must also be pointed out that an appellate court's standard of review of a non-jury trial is to determine whether the findings of the trial court are supported by

6

competent evidence and whether the trial court committed error in the application of law. Com. v. Decker, 698 A.2d 99, 100 (Pa. Super. 1997).

The Defendant claims that the evidence presented at trial was insufficient to sustain her conviction for DUI. In support of this position, she asserts that her performance, or lack thereof, on the FSTs was a result of her diagnosis of multiple sclerosis, as well as time of her traffic stop (2:30 a.m.). It must first be noted that, when given the opportunity to advise Officer Meisel of any physical condition that might affect her performance on FSTs, the Defendant failed to mention her MS diagnosis. (T.R. 11, 16, 28). Multiple Sclerosis is a chronic disease of the central nervous system, which manifests in symptoms such as muscular weakness, numbness, visual disturbances and other physical manifestations. Taber's Medical Encyclopedia, 19th edition.

Defendant's failures on the FSTs were much less physical inabilities than they were mental lapses, indicating an inability to process information. For instance, on the last FST, the walk and turn, the Defendant began the test while Officer Meisel was still explaining the test to her, and she turned improperly and stopped without completing the test. (T.R. 12). During the backwards counting test, she was unable to count backwards from 103 to 70, skipping many numbers and placing the numbers in the wrong order. (T.R. 13). During the standing leg test, she was instructed to count until the officer advised her to put her foot down. The Defendant made a "couple" of counts and then stopped, well before being instructed to do so. (T.R. 13). These failures on the

7

FSTs were not a result of physical symptoms of MS, but rather manifested the Defendant's inability to mentally process, comprehend and follow instructions, as well as her inability to use basic sequential ordering. Her failures on the FSTs are much more consistent with impairment due to alcoholic beverage consumption and/or use of a controlled substance than they are with the symptoms of MS.

As to her issues relating to the time of day, the Defendant never once complained or even mentioned to the officer that she was tired, exhausted or too sleepy to perform the tests. Certainly, given that she felt capable of driving a very large vehicle (an Escalade) at the time, she must not have considered the time of day to be a detriment to her ability to control her physical movements.

The Defendant also suggests that there were "several inconsistencies" between the testimony of Officer Meisel and the Defendant and that the court committed error in believing the officer. The characterization of "several inconsistencies" is a complete understatement of the differences between the testimony of the officer and the testimony of the Defendant. The Defendant's version of events was the complete opposite of Officer Meisel's version of events. During the Defendant's testimony, she indicated that she was leaving a red light when the officer stopped her. (T.R. 25). She indicated that she pulled over, denying that she stopped in the center turning lane. (T.R. 25). The Defendant denied ever having been in the center turning lane that night. (T.R. 27). She testified that the officer immediately called for a tow truck when she got out of

8

the car and before she performed FSTs. (T.R. 25). She denied ever telling the officer that she had smoked marijuana that day. (T.R. 26). The Defendant further denied that the officer ever asked her if she had a condition that would affect her performance of FSTs. (T.R. 28). She stated that she counted correctly during the FSTs and correctly performed the FSTs. (T.R. 25, 26). She denied that there was any liquid in her vehicle, as well as any odor of alcohol or marijuana. (T.R.27, 28).

The Defendant's testimony was a complete refutation of Officer Meisel's testimony. She even went so far as to indicate twice during her testimony that the officer was lying about the events of that night. (T.R. 27, 28). When sitting as a trier-of-fact in a non-jury trial, it is this court's function and duty to assess credibility. After carefully listening to all of the testimony presented during the non-jury trial, this court concluded that the testimony of Officer Meisel was the most credible. This court's finding with regard to credibility should be respected by the reviewing court, as it is the proper exercise of the trial court's duty to determine credibility and weigh evidence. Lyons, supra.

The third issue raised by the Defendant in her Statement of Matters Complained of on Appeal is that the evidence was insufficient to support a DUI conviction because there was not enough time for Officer Meisel to observe the Defendant driving and that she was able to safely maneuver her car into the parking lot. The facts, as accepted by this court and established through the credible testimony of Officer Meisel, are that the

9

officer observed the Defendant straddling the dividing lane markers between the passing lane and the center turning lane. (T.R. 6). This conduct was so concerning to the officer that he turned his vehicle around to follow the Defendant. (T.R. 6). The officer then noted that the Defendant failed to stay within her marked lane of traffic two (2) more times before he observed that she was driving with three-quarters (3/4) of her vehicle in the center turning lane. (T.R. 7). He then noted that she "jerked" her vehicle back into its lane of traffic. (T.R. 7).

After this sudden, abrupt movement to correct the movement of the vehicle, Officer Meisel initiated a traffic stop. The Defendant's response to the initiation of the traffic stop further demonstrated her inability to drive safely. In response to the officer's initiation of the traffic stop, the Defendant did not pull over on the right side of the road, as is typically expected. Instead, she stopped in the middle of the center turning lane, in the middle of the highway, blocking traffic. (T.R. 7, 8). The officer further described that, when he placed the lights and siren on, the Defendant hit her brakes and appeared to not know what to do. (T.R. 8). Officer Meisel instructed her to pull into a nearby parking lot for his safety, her safety and to allow traffic to continue around them. (T.R. 8). The Defendant was able to direct her vehicle into the parking lot because the officer used his patrol vehicle to block traffic across the highway. (T.R. 8, 18).

The totality of the observations of the officer clearly establish that the Defendant was incapable of safely operating her vehicle. If one were to look at each traffic

10

violation individually, one might find the evidence lacking as to her ability to safely operate a motor vehicle. When the totality of her conduct is considered -- from drifting out of her lane of travel several times to driving almost fully within the center turning lane to abruptly jerking her vehicle to correct its path of travel to stopping her vehicle in the middle of a highway – it becomes evident that the Defendant was impaired and unable to safely operate her vehicle.

## CONCLUSION

This court did not commit the alleged errors cited by the Defendant in her Statements of Matters Complained of on Appeal. There was sufficient credible evidence presented at trial to convict the Defendant of DUI. This court's conviction and sentence should be upheld.

BY THE COURT:

_____, J.
Beth A. Lazzara, Judge

DATE: ___2/6/13_____

11