J-A25034-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| SIMON ANTHONY MORRIS, | |
| Appellant | No. 1896 MDA 2015 |

Appeal from the Judgment of Sentence May 29, 2015
In the Court of Common Pleas of Centre County
Criminal Division at No(s): CP-14-CR-0002161-2013

BEFORE:  FORD ELLIOTT, P.J.E., SHOGAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:          **FILED NOVEMBER 07, 2016**

Appellant Simon Anthony Morris appeals the judgment of sentence entered by the Court of Common Pleas of Centre County after Appellant was convicted of two counts of Driving Under the Influence (DUI) and one count of Disobedience to Traffic Control Device.[1]  Appellant claims the trial court abused its discretion in limiting the testimony of his expert witness and challenges the weight of the evidence supporting his convictions.  We affirm.

On Sunday, June 30, 2013, at approximately 2:55 p.m., Officer Akinyokunbo Obiri of the State College Police Department was out on traffic patrol when he observed Appellant's vehicle proceed straight through an intersection where motorists are only allowed to make a right turn.  The

---

[1] 75 Pa.C.S. § 3802(a)(1) (General Impairment); 75 Pa.C.S. § 3802(c) (Highest Rate of Alcohol); 75 Pa.C.S. § 3111.

[*] Former Justice specially assigned to the Superior Court.

intersection is clearly marked with signs telling drivers that all traffic must turn right. Due to Appellant's failure to obey this traffic sign, Officer Obiri initiated a traffic stop of Appellant's vehicle.

When Officer Obiri explained his reason for the stop, Appellant claimed he did not realize there were signs posted at that intersection. Appellant alleged that he was coming from Spats Bar, which Officer Obiri later discovered was actually closed that day. As Officer Obiri noticed Appellant was avoiding eye contact, he observed Appellant's eyes were droopy. In addition, Officer Obiri smelled an odor of alcohol emanating from the vehicle. When Officer Obiri asked if Appellant or his passengers had been drinking, Appellant denied drinking but indicated that his passengers had been drinking. Officer Obiri asked Appellant to step out of the vehicle to see if the alcohol smell was coming directly from Appellant. As he exited the vehicle, Appellant had to grab the door handle for balance and swayed on his first few steps. Officer Obiri noticed Appellant personally smelled of alcohol and he was stuttering in his speech. When asked, Appellant again denied having alcohol prior to the stop.

After Appellant agreed to submit to field sobriety testing and Officer Obiri found his performance to be unsatisfactory, Officer Obiri arrested Appellant for suspicion of DUI and took him to Mount Nittany Medical Center for a blood draw. Officer Obiri read the implied consent warnings contained on the DL-26 form to Appellant, who indicated that he understood the implied consent warnings and agreed to the blood draw. Testing revealed

that Appellant's blood alcohol content was 0.260%, more than three times the legal limit.

Appellant was charged with the aforementioned DUI and traffic offenses. Prior to trial, the Commonwealth filed a Motion to Preclude Expert Report and Testimony, claiming defense expert Dr. Jimmie Valentine submitted a report containing speculative opinions not supported by the evidence or based on a reasonable degree of scientific certainty. The trial court heard argument before trial and granted the Commonwealth's motion in part, limiting Dr. Valentine to testify only concerning Officer Obiri's observations of Appellant during the traffic stop.

Appellant proceeded to a jury trial conducted on March 20, 2015. The Commonwealth presented the testimony of Officer Obiri, Alyssa Caldwell-Gill, the phlebotomist who performed Appellant's blood draw, and Christina Fialkowski, the forensic scientist employed at the Pennsylvania State Police Crime Lab who tested Appellant's blood sample. Appellant presented Dr. Valentine as his expert witness. Ultimately, the jury convicted Appellant of both DUI offenses and the failure to obey a traffic control device.

On May 29, 2015, the trial court sentenced Appellant for his conviction of DUI (highest rate of alcohol), imposing Intermediate Punishment for a period of five years, which included a period of Restrictive Intermediate Punishment of 120 days in the In-Home Detention Program. The trial court also ordered Appellant to pay costs, fines, and fees and to participate in various programs. Further, the trial court required Appellant to pay costs

and fines on the traffic violation but imposed no further penalty on the DUI (general impairment) conviction. On June 4, 2015, Appellant filed a Motion for Post-Sentence Relief. As the trial court did not act on this motion, it was denied by operation of law pursuant to Pa.R.Crim.P. 720 on October 5, 2015. Appellant filed this timely appeal on October 26, 2015 and complied with the trial court's directions to submit a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

Appellant raises the following issues for our review on appeal:

1. Did the trial court err in precluding Dr. Jimmie Valentine from testifying to the entirety of his expert report and professional scientific opinions where his report was nothing less than thorough and complete and his opinions were supported by peer review articles, to a degree of scientific certainty and would have assisted the jury in reaching their conclusions thereby violating Due Process and his right to be heard in a meaningful way[?]

2. Whether the trial court's verdict of guilt as to DUI: Highest Rate of Alcohol was against the weight of the evidence where the Commonwealth's witness testified that acetonitrile (a substance not found in human blood) may have been found in [Appellant's] blood sample; she had no concerns that it may have been present; and did nothing to determine why it was there; and Dr. Valentine opined that the observations made by Officer Obiri of [Appellant] were not consistent with someone with a .26 blood alcohol content.

3. Whether the trial court's verdict of guilt as to DUI: General Impairment was against the weight of the evidence where the officer was unable to link any observations of impaired driving to [Appellant] and the Commonwealth did not establish that [Appellant's] mental and physical faculties were impaired such that he could not safely operate a motor vehicle.

Appellant's Brief, at 1.

- 4 -

Appellant first challenges the trial court's discretion in limiting the testimony of his expert witness, Dr. Valentine. "[T]he admission of expert scientific testimony is an evidentiary matter for the trial court's discretion and should not be disturbed on appeal unless the trial court abuses its discretion." *Commonwealth v. Freeman*, 128 A.3d 1231, 1246 (Pa.Super. 2015) (quoting *Grady v. Frito–Lay, Inc.*, 576 Pa. 546, 839 A.2d 1038, 1046 (2003)). An abuse of discretion "is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record, discretion is abused." *Commonwealth v. Poplawski*, --- Pa. ---, 130 A.3d 697, 718 (2015).

Pennsylvania Rule of Evidence 702 sets forth the parameters for the admission of expert testimony:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge is beyond that possessed by the average layperson;
>
> (b) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; and
>
> (c) the expert's methodology is generally accepted in the relevant field.

Pa.R.E. 702.

In granting the prosecution's motion to preclude Dr. Valentine's expert report and testimony, the trial court indicated that, after reviewing Dr. Valentines' report twice, it concluded that:

> it appears as though it is a broad-sweeping compilation of suggestions and pointers for appropriate places for cross-examination without reaching the necessary scientific conclusions that this Court thinks needs to happen for it to be more than just speculation and innuendo to the jury.

Trial Court Opinion, 12/9/15, at 1-2.[2]

To be admissible, expert testimony must exhibit the application of expertise and cannot be merely an expert's lay opinion. **Snizavich v. Rohm & Haas Co.**, 83 A.3d 191, 195 (Pa.Super. 2013). "Testimony does not become scientific knowledge merely because it was proffered by a scientist. Likewise, expert testimony must be based on more than mere personal belief, and must be supported by reference to facts, testimony or empirical data." **Id**. (citation omitted). Further,

> The exercise of scientific expertise requires inclusion of scientific authority and application of the authority to the specific facts at hand. Thus, the minimal threshold that expert testimony must meet to qualify as an expert opinion rather than merely an

---

[2] We recognize that our Supreme Court held that "the proponent of expert scientific evidence bears the burden of establishing all of the elements for its admission under Pa.R.E. 702, which includes showing that the **Frye** rule is satisfied." **Grady**, 576 Pa.at 558, 839 A.2d at 1045 (citing **Frye v. United States**, 293 F. 1013 (Pa. 1923)). Under **Frye**, "novel scientific evidence is admissible if the methodology that underlies the evidence has general acceptance in the relevant scientific community. **Grady**, 576 Pa. at 555, 839 A.2d at 1043–44. The trial court in this case did not perform a **Frye** analysis, essentially finding that Appellant had failed to show the basic requirement of presenting a coherent scientific analysis that would assist the jury in understanding any facts at issue.

opinion expressed by an expert, is this: the proffered expert testimony must point to, rely on or cite some scientific authority—whether facts, empirical studies, or the expert's own research—that the expert has applied to the facts at hand and which supports the expert's ultimate conclusion. When an expert opinion fails to include such authority, the trial court has no choice but to conclude that the expert opinion reflects nothing more than mere personal belief.

*Id*. at 197.

In this case, the trial court did allow Dr. Valentine to testify that Officer Obiri's indications that Appellant had droopy eyes, slurred speech, trouble completing field sobriety tests were not definite proof of Appellant's intoxication, but were subjective observations made by the officer. The trial court also permitted Dr. Valentine to offer his opinion that Appellant's behavior was inconsistent with that of an individual with a 0.26% blood alcohol level.

Appellant challenges the trial court's decision to preclude Dr. Valentine from testifying to the rest of his expert report. In his appellate brief, Appellant lists Dr. Valentine's conclusions but does not explain why he believes that the trial court erred in finding these opinions were mere speculation unsupported by any scientific analysis. Instead, Appellant asserts that Dr. Valentine has offered well-founded opinions as a recognized figure in the fields of medical pharmacology and toxicology. While Appellant includes citations to scientific literature, he does not explain how Dr. Valentine's opinions were supported by these sources.

> The Rules of Appellate Procedure state unequivocally that each question an appellant raises is to be supported by

discussion and analysis of pertinent authority. Appellate arguments which fail to adhere to these rules may be considered waived, and arguments which are not appropriately developed are waived. Arguments not appropriately developed include those where the party has failed to cite any authority in support of a contention. This Court will not act as counsel and will not develop arguments on behalf of an appellant. [M]ere issue spotting without analysis or legal citation to support an assertion precludes our appellate review of [a] matter.

*Coulter v. Ramsden*, 94 A.3d 1080, 1088–89 (Pa.Super. 2014), *appeal denied,* 403 WAL 2014 (Pa. filed Dec. 10, 2014) (internal citations and quotation marks omitted). As Appellant has not provided any discussion of his claims of trial court error, we find Appellant has waived this argument on appeal.

Even assuming Appellant had properly developed his argument, we would find it to be meritless. Our review of Dr. Valentine's expert report shows that the majority of his conclusions are made without any citation to relevant authority or a reference to the basis upon which Dr. Valentine made his conclusions. For example, Dr. Valentine baldly asserts that Appellant's field sobriety test results were skewed as Appellant was under undue pressure to perform well in front of his peers. He also speculates that Appellant's BAC level may have been lower at the time of the traffic stop because he was in an alcohol absorption phase in which his BAC did not read accurately until his blood was drawn 32 minutes later. Dr. Valentine offers no factual basis for these conclusions and does not recognize that Appellant denied drinking before the traffic stop. Dr. Valentine also questions Ms. Fialkowski's credibility, asserting that her resume does not contain a college

transcript showing the courses she completed or whether she published any scientific articles. However, Dr. Valentine did not claim Ms. Fialkowski is unqualified in any way and admits that she has a bachelor of science degree in applied forensic science and completed forensic toxicology training with the Pennsylvania State Police.

When Dr. Valentine does cite to a scientific study, it is inapplicable to the facts of this case. In arguing that an officer's smell of alcohol on a driver cannot be scientifically correlated with alcohol use, Dr. Valentine cites a scientific article stating that there was a small likelihood of an officer detecting breath alcohol odor for individuals with BACs below 0.10% Dr. Valentine does not explain the relevance of this study to this case where Appellant's BAC was 0.26%. Dr. Valentine also noted that Officer Obiri did not observe vertical gaze nystagmus (VGN), which he notes is associated with high doses of alcohol. However, the article that he relies on does not support his conclusion that VGN *must* be observed in individuals with high blood alcohol levels. Moreover, some of Dr. Valentine's expert conclusions are merely points for the defense to cross-examine the prosecution witnesses. Dr. Valentine emphasizes that Officer Obiri interchangeably used the terms "slurred" speech and "stuttering." Expert testimony is not necessary to cross-examine the officer on his discrepancy of language.

Essentially, Dr. Valentine merely reviews the facts in this case and speculates that Appellant's blood alcohol level test results cannot be correct. We agree with the trial court's observation that Dr. Valentine's report

reflected nothing more than personal belief as he did not apply any relevant scientific authority to the facts at hand to support his conclusions. *Coulter*, *supra*. Thus, we find the trial court did not err in limiting the scope of Dr. Valentine's expert testimony.

Appellant also challenges the weight of the evidence supporting both of his DUI convictions. When reviewing a challenge to the weight of the evidence, our standard of review is as follows:

> The weight of the evidence is a matter exclusively for the finder of fact, who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. A new trial is not warranted because of a mere conflict in the testimony and must have a stronger foundation than a reassessment of the credibility of witnesses. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice. On appeal, our purview is extremely limited and is confined to whether the trial court abused its discretion in finding that the jury verdict did not shock its conscience. Thus, appellate review of a weight claim consists of a review of the trial court's exercise of discretion, not a review of the underlying question of whether the verdict is against the weight of the evidence. An appellate court may not reverse a verdict unless it is so contrary to the evidence as to shock one's sense of justice.

*Commonwealth v. Rosser*, 135 A.3d 1077, 1090 (Pa.Super. 2016) (citation omitted).

Appellant claims that the weight of the evidence does not support his conviction under Section 3802(c) (Highest Rate of Alcohol) of the Vehicle Code. To be convicted of DUI — highest rate of alcohol, an individual's BAC

- 10 -

must be 0.16% or higher.  ***See*** 75 Pa.C.S. § 3802(c).[3]  Here, Appellant

concedes that his BAC was measured to be 0.26% less than one hour after

he was detained by the arresting officer.  Nevertheless, Appellant suggests

that his blood sample may have been contaminated, asserting that the

testing revealed the presence of acetonitrile, a substance not normally

contained in human blood.  Appellant argues that the Commonwealth's

expert witness's testimony should have been discounted as she did not

determine why this substance was in Appellant's blood.

Our review of the trial transcript reveals that Ms. Fialkowski, the

forensic scientist who tested Appellant's blood sample, admitted that her

testing indicated the possible presence of acetonitrile in Appellant's blood.

However, she clarified that the instrument she used, a gas chromatograph,

was not set up to identify the compound and thus, she could not confirm

that the blood sample contained acetonitrile.  Moreover, Officer Obiri, Ms.

Caldwell-Gill, the phlebotomist who drew Appellant's blood, and Ms.

Fialkowski testified in depth as to how the sample was taken, sealed,

---

[3] Section 3802(c) provides the following:

> **(c) Highest rate of alcohol. --** An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the alcohol concentration in the individual's blood or breath is 0.16% or higher within two hours after the individual has driven, operated or been in actual physical control of the movement of the vehicle.

75 Pa.C.S. § 3802.

entered into evidence, tested, and carefully documented. All the prosecution witnesses were subject to cross-examination by defense counsel. Despite Appellant's insinuations to the contrary, there was no evidence that Appellant's blood sample was contaminated, that there was a gap in the chain of custody, or that the tests inaccurately measured Appellant's BAC to be 0.26%. The jury was free to believe all, part, or none of the Commonwealth's evidence and to determine the credibility of the witnesses. *See Rosser*, *supra*. As a result, we conclude that the trial court properly exercised its discretion in determining the jury's verdict was not against the weight of the evidence.

In addition, Appellant challenges the weight of the evidence supporting his conviction for DUI – general impairment, asserting that "Officer Obiri's opinion that Appellant was incapable of safe driving was based on mere subjective factors that do not scientifically correlate to levels of impairment." Appellant's Brief, at 37. In order to sustain a conviction of DUI — general impairment, "the Commonwealth [must] prove the following elements: the accused was driving, operating, or in actual physical control of the movement of a vehicle during the time when he or she was rendered incapable of safely doing so due to the consumption of alcohol." *Commonwealth v. Segida*, 604 Pa. 103, 985 A.2d 871, 879 (2009). Moreover, this Court has stated, "[e]vidence of erratic driving is not a necessary precursor to a finding of guilt under [DUI — general impairment]. The Commonwealth may prove that a person is incapable of safe driving

through the failure of a field sobriety test." ***Commonwealth v. Mobley***, 14 A.3d 887, 890 (Pa.Super. 2011).

Furthermore, our Supreme Court has stated:

> The types of evidence that the Commonwealth may proffer in a subsection 3802(a)(1) prosecution include but are not limited to, the following: the offender's actions and behavior, including manner of driving and ability to pass field sobriety tests; demeanor, including toward the investigating officer; physical appearance, particularly bloodshot eyes and other physical signs of intoxication; odor of alcohol, and slurred speech. Blood alcohol level may be added to this list, although it is not necessary and the two hour time limit for measuring blood alcohol level does not apply.... The weight to be assigned these various types of evidence presents a question for the fact-finder, who may rely on his or her experience, common sense, and/or expert testimony. Regardless of the type of evidence that the Commonwealth proffers to support its case, the focus of subsection 3802(a)(1) remains on the inability of the individual to drive safely due to consumption of alcohol - not on a particular blood alcohol level.

***Segida***, 604 Pa. at 115-16, 985 A.2d at 879. In ***Mobley***, this Court upheld a defendant's conviction for DUI – general impairment as the arresting officer reported that Mobley had "failed four separate field sobriety tests, smelled of alcohol, and proceeded to coast through a stop sign despite a police officer being in plain view." ***Mobley***, 14 A.3d at 890.

The facts of the instant case are substantially similar to the facts in ***Mobley***. Officer Obiri observed Appellant proceed straight through an intersection which was clearly marked with traffic signs that directed all traffic to turn right. After Officer Obiri initiated a traffic stop, he noticed Appellant smelled of alcohol, was avoiding eye contact, had droopy eyes,

and slurred his speech. Officer Obiri observed Appellant struggle to exit the vehicle, needing to hold on to the door for support and Appellant failed three field sobriety tests. Thirty-two minutes after the stop, Appellant's blood alcohol level was measured to be 0.260%, which is more than three times the legal limit. Accordingly, we conclude that the trial court did not abuse its discretion in denying Appellant's challenge to the weight of the evidence supporting his conviction for DUI – general impairment.

For the foregoing reasons, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/7/2016