J-S03007-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JASPAR JVON DUDLEY | : | |
| | : | |
| Appellant | : | No. 779 WDA 2021 |

Appeal from the Judgment of Sentence Entered June 2, 2021
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0004875-2020

BEFORE:   LAZARUS, J., SULLIVAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY LAZARUS, J.:                **FILED: MAY 20, 2022**

Jaspar Jvon Dudley appeals from the judgment of sentence, imposed in the Court of Common Pleas of Allegheny County, after the trial court, sitting without a jury, convicted him of driving under the influence ("DUI")—highest rate,[1] DUI—general impairment,[2] and driving while operating privilege is suspended or revoked.[3]  Upon careful review, we affirm.

On August 5, 2019, at approximately 4:00 a.m., Pennsylvania State Trooper D'Andre Bailey responded to a call for a vehicle that was off the roadway on I-376 eastbound just prior to the Swissvale exit.  **See** N.T. Trial,

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 75 Pa.C.S.A. § 3802(c).

[2] **Id.** at § 3802(a)(1).

[3] **Id.** at § 1543(a).

3/25/21, at 13, 18, 25. Upon arriving at the scene approximately fifteen minutes later, Trooper Bailey observed numerous law enforcement, EMS, and fire vehicles surrounding an SUV that was situated on a hillside off of the berm. *Id.* at 13, 24. Trooper Bailey exited his cruiser and approached Dudley, who was outside his vehicle. *Id.* Dudley's SUV was undamaged and warm to the touch. *Id.* at 19. Trooper Bailey observed that Dudley had a lump on his head and a "small gash." *Id.* When he got closer to Dudley, Trooper Bailey noticed "a strong odor of alcohol emanating from [Dudley's] person." *Id.* at 14. Dudley's eyes were bloodshot and watery, and his gait was unsteady. *Id.* Dudley informed Trooper Bailey that he had been "out on the town" prior to arriving at his current location and that he was drunk. *Id.* at 15. Trooper Bailey found a Smirnoff bottle in Dudley's vehicle, which Dudley said belonged to his girlfriend and was from earlier in the evening. *Id.* When Trooper Bailey asked Dudley how he had arrived at his location, Dudley responded that he had driven there. *Id.* at 16.

Dudley agreed to be transported to the hospital by Trooper Bailey. *Id.* at 16. At the hospital, Dudley was treated by a nurse and then verbally consented to a blood draw, which was taken at 5:20 a.m. *Id.* at 23, 28. Testing showed Dudley's blood alcohol content ("BAC") to be 0.191 percent. *Id.* at 16, 17, 23.

Dudley was charged with the above counts, as well as the summary offenses of reckless driving, careless driving, and disregarding traffic lane. On March 7, 2021, Dudley filed a motion *in limine* seeking to exclude from

evidence, pursuant to the *corpus delicti* rule, the incriminating statements he made to Trooper Bailey. On March 25, 2021, the court heard argument on Dudley's motion, which it subsequently denied. Dudley immediately proceeded to trial and was convicted of DUI—highest rate, DUI—general impairment, and driving while operating privilege is suspended or revoked. The court acquitted Dudley of the remaining summary offenses.

On April 24, 2021, Dudley filed a motion to reconsider the denial of his motion in *limine*. The court denied that motion on June 2, 2021, on which date Dudley appeared for sentencing. The court imposed a sentence of six months' probation for DUI—highest rate, with no further penalty imposed on the remaining counts. Dudley did not file post-sentence motions. He filed a timely notice of appeal on July 2, 2021.[4] Dudley raises the following claims for our review:

> 1. Whether the trial court abused its discretion in admitting [Dudley's] statements without a showing of the *corpus delicti*, that someone actually drove the vehicle while intoxicated, by a preponderance of the evidence?
>
> 2. Whether the trial court erred in considering [Dudley's] statements at trial where the Commonwealth could not prove the *corpus delicti* beyond a reasonable doubt, that someone was intoxicated while driving the vehicle?
>
> 3. Whether the Commonwealth failed to present sufficient evidence that [] Dudley drove, operated, or was in actual physical control of a vehicle: (a) while incapable of safely driving for the general impairment conviction[; and] (b) having an alcohol

---

[4] The trial court did not order Dudley to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.

concentration of at least 0.16% within two hours of driving for the highest rate of alcohol conviction?

Brief of Appellant, at 6 (unnecessary capitalization omitted).

Dudley first claims that the trial court abused its discretion in admitting his statements to Trooper Bailey without requiring, pursuant to the *corpus delicti* rule, that the Commonwealth establish, by a preponderance of the evidence and independent of Dudley's statements, that someone had been driving the vehicle while intoxicated. Dudley argues that "[t]he affidavit of probable cause, which was the only information relied upon by the Commonwealth in seeking to admit Dudley's alleged statements, only established that Dudley was intoxicated." Brief of Appellant, at 16. Dudley argues that the fact that Dudley's vehicle was off the highway fails to establish that it had been driven by a drunk driver and that the Commonwealth "presented nothing inherent about the positioning of the vehicle that would indicate it was driven or had come to a stop as a result of drunk or unsafe driving[.]" *Id.* at 17. Dudley argues that, "[w]ithout any independent information on how Dudley arrived at the location, it is unclear whether he was the driver, a passenger, or had arrived by the roadside some other way." *Id.* at 18.

In response, the Commonwealth argues that, contrary to Dudley's assertion, the trial court relied upon both the affidavit of probable cause as well as the preliminary hearing transcript in rendering its decision on the admissibility of Dudley's statements. The Commonwealth argues that "those two items provided ample support for the trial court's pre-trial ruling on the

*corpus delicti* issue." Brief of Appellee, at 22 (unnecessary capitalization omitted). Specifically, the Commonwealth cites the following facts gleaned from those two sources:

> [T]he vehicle was off of the roadway into a grassy area on [I]nterstate 376, there was an open bottle of alcohol in the vehicle and [Dudley], who was visibly intoxicated, was observed by Trooper Bailey to be the only individual present with the vehicle, other than the emergency personnel. Given these facts, it is reasonable to conclude that the car was in a location where it was unlikely that it was left by another individual and that [Dudley] happened to arrive, particularly[] where there was an open bottle of alcohol in the vehicle and [Dudley] himself was exhibiting such a high degree of intoxication that Trooper Bailey felt that it was unsafe to perform field sobriety tests.

*Id.* at 27.

Our standard of review for a challenge pursuant to the *corpus delicti* rule is well-settled.

> The *corpus delicti* rule is designed to guard against the hasty and unguarded character which is often attached to confessions and admissions and the consequent danger of a conviction where no crime has in fact been committed. The *corpus delicti* rule is a rule of evidence. Our standard of review on appeals challenging an evidentiary ruling of the trial court is limited to a determination of whether the trial court abused its discretion. The *corpus delicti* rule places the burden on the prosecution to establish that a crime has actually occurred before a confession or admission of the accused connecting him to the crime can be admitted. The *corpus delicti* is literally the body of the crime; it consists of proof that a loss or injury has occurred as a result of the criminal conduct of someone. The criminal responsibility of the accused for the loss or injury is not a component of the rule. . . . The *corpus delicti* may be established by circumstantial evidence. Establishing the *corpus delicti* in Pennsylvania is a two-step process. The first step concerns the trial judge's admission of the accused's statements[,] and the second step concerns the fact finder's consideration of those statements. In order for the statement to

be admitted, the Commonwealth must prove the *corpus delicti* by a preponderance of the evidence. In order for the statement to be considered by the fact finder, the Commonwealth must establish the *corpus delicti* beyond a reasonable doubt.

***Commonwealth v. Hernandez***, 39 A.3d 406, 410–11 (Pa. Super. 2012) (quotation marks omitted).

"Before introducing an extra-judicial admission, the Commonwealth is not required to prove the existence of a crime beyond a reasonable doubt. Rather, it is enough for the Commonwealth to prove that the injury or loss is more consistent with a crime having been committed than not." ***Commonwealth v. Zugay***, 745 A.2d 639, 652 (Pa. Super. 2000) (internal citations omitted).

Here, following argument on Dudley's motion in *limine*, the court ruled on the issue as follows:

THE COURT: [] I'd like to thank counsel for their argument and the transmission of the preliminary hearing transcript, and the affidavit. And upon consideration of it, I'm going to deny the motion in *limine* for the following reasons: I find that there is sufficient evidence of *corpus delicti*, and based on the following facts: Upon Trooper Bailey's arrival at the scene, [] Dudley was present and he was in a highly intoxicated state. That's very plain from the transcript and from the affidavit that he had watery eyes, they were watery and bloodshot, he had a strong odor of alcohol emanating from his person, and that the trooper did not even give a field sobriety test for the reason that he concluded that Mr. Dudley was—because of the degree of intoxication evidenced by [] Dudley's appearance that would be number one.

Number two, the car was parked in a grassy area . . . that's not a place for usually parking cars. [A]nd then [] Dudley had some kind of an injury and the emergency personnel people were at the scene. He had either a lump on his head—which was referred to in the testimony—and a cut upon his head. And also, the vehicle— I didn't see evidence as to whether [] Dudley actually owned the

- 6 -

vehicle, but I'm concluding that he had operated the vehicle based on the contemporaneous confluence of all of these facts right at the scene.

And I would just note[,] lastly, that it would be considered evidentiary, that there was a Smirnoff bottle in the rear seat of the vehicle. And [defense counsel] suggests that that was not [] Dudley's, it belonged to his girlfriend, that could well be the case, nevertheless, it was evidence at the scene. I think that this was sufficient evidence that an actual [] motor vehicle violation at that time had occurred. So[,] the motion is denied.

N.T. Pre-Trial Motion Hearing, 3/25/21, at 10-11 (unnecessary capitalization omitted).

We agree with the trial court that the circumstantial evidence presented by the Commonwealth was sufficient to demonstrate, by a preponderance of the evidence, that the offense of DUI had occurred, where: (1) a visibly and significantly intoxicated person, (2) with injuries, (3) was found alone, (4) next to a vehicle that was stopped in the grass off the roadway and was situated in a place where cars would not normally come to rest, and (5) the vehicle contained an open bottle of alcohol. Accordingly, Dudley is entitled to no relief on his first claim.

Next, Dudley asserts that the Commonwealth failed to prove—beyond a reasonable doubt and independent of Dudley's oral statements—that someone had driven the vehicle while intoxicated. Accordingly, Dudley claims, his statements to Trooper Bailey should not have been considered by the court as evidence of guilt under the second step of the *corpus delicti* rule. Similar to his argument, **supra**, regarding the first step of the *corpus delicti* rule, Dudley asserts that the Commonwealth presented no evidence as to how the

vehicle arrived at its resting place or that its location on the side of the interstate was the result of drunk driving. Brief of Appellant, at 23. Dudley further asserts that his mere proximity to the vehicle did not prove he drove it and that "the actual driver could have fled or left the scene to seek assistance." *Id.* at 24.

The Commonwealth argues that the circumstantial evidence presented at trial established, beyond a reasonable doubt, that the offense of DUI had been committed. Specifically, the Commonwealth highlights the following trial testimony of Trooper Bailey:

- He arrived on the scene at 4:00 a.m. and it was not a multi-vehicle accident, *see* N.T. Trial, 3/25/21, at 18, 24;

- The vehicle was situated on a grassy area off the roadway and Dudley was standing outside the vehicle, *see id.* at 13, 19;

- The vehicle was warm to the touch and Trooper Bailey did not observe any damage to the car as if it had been in an accident, *see id.* at 19;

- Trooper Bailey observed a lump on Dudley's head, as well as a small gash, upon approaching him, *see id.* at 14;

- Upon approaching Dudley, Trooper Bailey noticed a strong odor of alcohol emanating from Dudley's person, that Dudley's eyes were bloodshot and watery, and that he had an unsteady gait, *see id.* at 14;

- There was an open Smirnoff bottle in the vehicle, *see id.* at 15; and

- Trooper Bailey did not conduct field sobriety tests on Dudley because of his physical state, *see id.* at 16.

*See* Brief of Appellee, at 32-33.

Again, we agree with the Commonwealth that "there was simply no other plausible explanation as to how [Dudley] could have arrived [at] that location on the interstate at that time of night, especially[] where [he] was exhibiting such a high degree of intoxication." *Id.* at 34-35. The circumstantial evidence presented by the Commonwealth, as well as all reasonable inferences derived therefrom, was sufficient to demonstrate, beyond a reasonable doubt, that the offense of DUI had been committed. Accordingly, the trial court did not err in considering Dudley's inculpatory statements as evidence of his guilt. ***Hernandez***, ***supra***.

Dudley next claims that the evidence presented at trial was insufficient to prove, beyond a reasonable doubt, that Dudley was unlawfully intoxicated while driving and that the evidence only established that he was intoxicated and had driven "at some point during the night." Brief of Appellant, at 25.

> [O]ur standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner[,] giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged[,] and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. [T]he facts and circumstances established by the Commonwealth need not be absolutely incompatible with the defendant's innocence. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

*Commonwealth v. Lynch*, 242 A.3d 339, 352 (Pa. Super. 2020) (citation omitted).

Dudley first challenges his conviction for DUI-general impairment, for which the Commonwealth was required to prove that Dudley "dr[ove], operate[d], or [was] in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that [he was] rendered incapable of safely driving, operating[,] or being in actual physical control of the movement of the vehicle." 75 Pa.C.S.A. § 3802(a)(1). "[S]ubsection 3802(a)(1) is an 'at the time of driving' offense, requiring that the Commonwealth prove the following elements: the accused was driving, operating, or in actual physical control of the movement of a vehicle during the time when he or she was rendered incapable of safely doing so due to the consumption of alcohol." *Commonwealth v. Segida*, 985 A.2d 871, 879 (Pa. 2009).

> Section 3802(a)(1), like its predecessor [statute], is a general provision and provides no specific restraint upon the Commonwealth [regarding] the manner in which it may prove that an accused operated a vehicle under the influence of alcohol to a degree which rendered him incapable of safe driving. . . . The types of evidence that the Commonwealth may proffer in a subsection 3802(a)(1) prosecution include[,] but are not limited to, the following: the offender's actions and behavior, including manner of driving and ability to pass field sobriety tests; demeanor, including toward the investigating officer; physical appearance, particularly bloodshot eyes and other physical signs of intoxication; odor of alcohol[;] and slurred speech. Blood alcohol level may be added to this list, although it is not necessary and the two[-]hour time limit for measuring blood alcohol level does not apply. Blood alcohol level is admissible in a subsection 3801(a)(1) case only insofar as it is relevant to and probative of

the accused's ability to drive safely at the time he or she was driving. The weight to be assigned these various types of evidence presents a question for the fact-finder, who may rely on his or her experience, common sense, and/or expert testimony. Regardless of the type of evidence that the Commonwealth proffers to support its case, the focus of subsection 3802(a)(1) remains on the inability of the individual to drive safely due to consumption of alcohol—not on a particular blood alcohol level.

*Id.*

Here, in addition to the evidence set forth above, the Commonwealth presented Trooper Bailey's testimony that Dudley told him that "he had been out on the town prior to being at his location and that he was drunk." N.T. Trial, 3/25/21, at 15. Dudley also told Trooper Bailey that he had driven to his current location. *See id.* at 16. Finally, blood testing showed Dudley's BAC to be more than twice the legal limit. *See id.* at 17. The totality of evidence presented by the Commonwealth was sufficient for the trial judge, sitting as fact-finder and "rely[ing] on his . . . experience[ and] common sense," *Segida*, 985 A.2d at 879, to conclude, beyond a reasonable doubt, that Dudley had driven while intoxicated and incapable of safely driving, operating, or being in physical control of a vehicle. *See* 75 Pa.C.S.A. § 3802(a)(1). Accordingly, his conviction for DUI-general impairment must stand.

Finally, Dudley challenges his conviction for DUI-highest rate, which is defined as follows:

(c) Highest rate of alcohol.--An individual may not drive, operate[,] or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the alcohol concentration in the individual's blood or breath is 0.16%

- 11 -

or higher within two hours after the individual has driven, operated[,] or been in actual physical control of the movement of the vehicle.

75 Pa.C.S.A. § 3802(c).

Dudley argues that the Commonwealth presented no evidence as to when Dudley drove the vehicle and failed to prove that he did so within two hours of the blood draw, as required under section 3802(c). Dudley asserts that the Commonwealth was only able to show that Trooper Bailey arrived on the scene at approximately 4:00 a.m., about 15 minutes after receiving the radio call, and that the blood draw occurred at 5:20 a.m. Dudley argues that "[t]he Commonwealth could not account for the period of time between when the vehicle came to a stop and when the vehicle would have been reported or when emergency personnel, let alone Trooper Bailey, arrived on scene." Brief of Appellant, at 32. Dudley also asserts that the presence of alcohol in the vehicle allowed for the inference that Dudley drank in the time after the vehicle came to a stop, but before emergency personnel arrived. Finally, Dudley claims there would have been no reasonable expectation that passing vehicles would have reported the "abandoned" vehicle promptly, given that it posed no threat to traffic in light of its location off the roadway.

The Commonwealth responds that the totality of the circumstantial evidence presented at trial (as described above), when viewed in the light most favorable to the Commonwealth, was sufficient to support the conclusion that he operated the vehicle while intoxicated within two hours of the blood draw. The Commonwealth notes that "our jurisprudence does not require

fact-finders to suspend their powers of logical reasoning or common sense in the absence of direct evidence. Instead, [fact-finders] may make reasonable inferences from circumstantial evidence adduced at trial." Brief of Appellee, at 45, quoting **Commonwealth v. Teems**, 74 A.3d 142, 149 (Pa. Super. 2013).

Once again, we agree with the Commonwealth that the circumstantial evidence was sufficient to support Dudley's conviction of DUI-highest rate. Dudley, who had a small gash and lump on his head, admitted to having been "out on the town" prior to driving to his location, and that he was drunk. Dudley's car was situated in an area near the exit for Swissvale, off an interstate in the highly-populated Pittsburgh metropolitan area. Contrary to Dudley's argument, it would be reasonable for the finder of fact to infer that, despite the early-morning hour, the amount of passing traffic—particularly professional tractor-trailer operators—would not have been insubstantial. The car was not situated on the shoulder, but rather entirely off the roadway, on the grass, where disabled vehicles do not normally pull over. Thus, it is doubtful that Dudley's car could have sat in such a location for very long before someone would have called 911. Moreover, when Trooper Bailey arrived at the scene at 4:00 a.m.—approximately 15 minutes after receiving the dispatch—Dudley's vehicle was warm to the touch, from which the court could reasonably have inferred that it had been recently operated. Finally, when Dudley's blood was drawn at 5:20 a.m., his BAC exceeded the highest rate of 0.16% by 0.031%.

- 13 -

In light of the foregoing, when viewed in the light most favorable to the Commonwealth and granting the Commonwealth the benefit of all reasonable inferences to be drawn from the evidence, **Lynch**, **supra**, the evidence—though entirely circumstantial—was sufficient to support Dudley's conviction for DUI-highest rate. **Teems**, 74 A.3d at 148 (fact-finders may make reasonable inferences from circumstantial evidence introduced at trial).

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/20/2022